Barry M. GOLDWATER, Plaintiff,

v.

Ralph GINZBURG, Warren Boroson and Fact Magazine, Inc., Defendants.

No. 65 Civ. 2676.

United States District Court
S. D. New York.

Dec. 27, 1966.

Regan, Goldfarb, Powell & Quinn, New York City, for plaintiff; Roger Robb, Washington, D. C., Louis H. Powell, Peter G. Corbett, New York City, Robb, Porter, Kistler & Parkinson, Washington, D. C., of counsel.

Harris B. Steinberg, New York City, for defendants; Stanley S. Arkin, New York City, of counsel.

WYATT, District Judge.

This is a motion by defendants for summary judgment in their favor. Fed. R.Civ.P. 56. The action is one for libel and plaintiff has demanded jury trial. The complaint prays for one million dollars as compensatory damages and another one million dollars as punitive damages.

Defendants contend that application of the principle announced in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) requires that they have summary judgment. That principle is as follows (376 U.S. at 279–280, 84 S.Ct. at 726):

> "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

Three of the Justices (Black, Douglas, and Goldberg, JJ.) believed that statements about the official conduct of a public official were absolutely privileged, actual malice or no.

Plaintiff is a citizen of Arizona; defendants Ginzburg and Boroson are citizens of New York; defendant Fact Magazine, Inc. is a New York corporation with its principal place of business here. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

The complaint avers that beginning in 1953 plaintiff was a United States Senator from Arizona and that in July 1964 he became a nominee for the office of President of the United States at the election held on November 3, 1964; that defendants published an issue of Fact Magazine about October 1, 1964 which was described as "A Special Issue on the Mind of Barry Goldwater"; and that a copy of this "special issue" is annexed to the complaint. These averments are admitted.

The complaint avers that Fact Magazine contained many false and defamatory statements about plaintiff. The magazine is divided into two sections. The first (pp. 3–22) consists of an article entitled "Goldwater: The Man and the Menace". The second (pp. 24–64) is entitled "What Psychiatrists Say About Goldwater" and consists of replies, excerpts from replies, and in some cases paraphrases of replies to a questionnaire sent by defendants to 12,356 psychiatrists throughout the United States, most of whom did not respond. Preceding this collection of responses is a three paragraph description of how and in what number the responses were obtained. Printed on the back cover under the heading "What Psychiatrists Say About Goldwater:" are certain quotes taken from some of the replies printed within.

Plaintiff avers that many statements in the replies and in the article are false and defamatory. Examples of such statements are: that plaintiff is "mentally unbalanced", a "dangerous lunatic", a "coward", has had "nervous breakdowns", has "paranoia", is a "compensated schizophrenic", has "a chronic psychosis", etc., etc. The magazine appears to state in substance that plaintiff suffers from a mental illness which renders him unfit to be President.

The complaint avers that the alleged defamatory statements were made with "actual malice, with knowledge that such statements were false or with reckless

disregard of whether such statements were false or not. * * * "

The answer denies that any statements in the magazine are false or defamatory and denies actual malice. The answer also sets out the affirmative defenses of truth, fair comment, and privilege based on the fact that plaintiff was a United States Senator and a candidate for the Presidency at the time the magazine was published and that it was published without actual malice.

Plaintiff has taken the depositions of defendants and of four of the psychiatrists whose statements were published in the magazine. Defendants have taken the deposition of plaintiff.

The motion for summary judgment is supported by the affidavits of defendants Ginzburg and Boroson who say that they were responsible for the publication, that they honestly believed in the truth of all statements of fact, and that they honestly held all opinions expressed. They say that they acted in good faith and published the magazine in the national interest to promote consideration of "crucial issues" in the Presidential campaign. In short, they deny any actual malice.

The opposition to the motion is based on the depositions taken by plaintiff and on documents obtained by discovery. Plaintiff contends that in this material is evidence of actual malice on the part of defendants and that there is a genuine issue as to the material fact of actual malice.

■ There is no doubt but that plaintiff was at the time of publication a public official within the meaning of the *Sullivan* decision. Not only was he a United States Senator, but he was then a candidate for the highest public office in the United States. As such, he necessarily offered to free and open public discussion any and all elements of his character and background which might have any bearing on his fitness for office. That what is said or printed concerning such a man should be given less protection under the First Amendment than that afforded the defendants in

*Sullivan* is not conceivable. See Rosenblatt v. Baer, 383 U.S. 75, 86, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); Pauling v. News Syndicate Co., 335 F.2d 659, 671 (2d Cir. 1964), cert. denied, 379 U.S. 968, 85 S.Ct. 662, 13 L.Ed.2d 561 (1965); Pauling v. Globe-Democrat Publishing Co., 362 F.2d 188 (8th Cir. 1966) and cases cited therein at 197; Walker v. Courier Journal and Louisville Times Co., 246 F.Supp. 231 (W.D.Ky.1965), rev'd on other grounds, (6th Cir., Oct. 28, 1966), 368 F.2d 189; Jacobowitz v. Posner, N.Y.Law Journal, Nov. 15, 1966, p. 19, col. 7 (Sup.Ct. Queens County).

There is also no question but that what was published in the magazine related to plaintiff's "official conduct" (376 U.S. at 279) within the meaning of the *Sullivan* decision.

"Of course, any criticism of the manner in which a public official performs his duties will tend to affect his private, as well as his public, reputation. The *New York Times* rule is not rendered inapplicable merely because an official's private reputation, as well as his public reputation is harmed. The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant." Garrison v. State of Louisiana, 379 U.S. 64, 77, 85 S.Ct. 209, 217, 13 L.Ed. 2d 125 (1964).

■ It is suggested for defendants that the statements in the magazine were of opinions rather than of facts. The distinction between fact and opinion "has proved to be a most unsatisfactory and unreliable one, difficult to draw in practice". Prosser, Handbook of the Law of Torts (3d ed.) 814. Whether a statement is one of fact or of opinion (comment) is probably for the jury to decide. Van Arsdale v. Time, Inc., 35 N.Y.S.2d 951, 953 (Shientag, J., Sup.Ct.N.Y.County) aff'd mem., 265 App.Div. 919, 39 N.Y.S. 2d 413 (1942); Restatement, Torts § 618 (1938).

In any event, even if all the statements were opinions only, proof of actual malice would take away from defendants the privilege conferred by the *Sullivan* principle. Such was stated in a footnote to the *Sullivan* opinion (376 U.S. at 292, 84 S.Ct. at 732 n. 30):

"Since the Fourteenth Amendment requires recognition of the conditional privilege for honest misstatements of fact, it follows that a defense of fair comment must be afforded for honest expression of opinion based upon privileged, as well as true, statements of fact. Both defenses are of course defeasible if the public official proves actual malice * * *."

Decision of this motion comes down to whether there is a genuine issue as to the existence of actual malice on the part of defendants. It seems to me that there is enough shown for plaintiff to raise such an issue and that the motion must be denied.

A jury might infer actual malice from the following, among other material (parenthetical references are to pages of the transcript of the deposition of defendant Ginzburg):

1. The covering letter with which the questionnaire was mailed to the psychiatrists.

2. Ginzburg had information about the "nervous breakdowns" mentioned in the covering letter from one source only, and did not know whether or not that source had the information from personal knowledge (54–55).

3. In showing how the psychiatrists' letters were signed, "name withheld" was used interchangeably with "anonymous", that is, replies which were unsigned were shown as "name withheld" (69) which might be found to suggest that they had been signed.

4. A letter from the Medical Director of the American Psychiatric Association warned of the invalidity of the Fact survey because responses were sought despite the fact that none of those asked to respond had made a "thorough clinical examination".

Ginzburg read this letter before he published the magazine (72). The letter was not published with the questionnaire.

5. Ginzburg did not read in their entirety articles from which he took quotes to supply the basis for his own piece. Instead, he read only the parts underscored for him by others (148). Thus, at times he would quote one part of an article without quoting another part which might tend to qualify or contradict the part quoted (145–147, for example). He omitted contradictory material within the same sentence when quoting from that sentence (158–159).

6. There are some statements in Ginzburg's article for which he could not establish a basis on his deposition (219–224, 225–226, 229–230, 230–231, for example).

7. There is much to indicate alteration of responses from the psychiatrists. For example:

a. a *signed* letter which was critical of the Fact survey was published as "anonymous" (250–252);

b. one published "letter" was in fact a "distillation" of the original, done by Ginzburg, without so indicating in the magazine (253–256);

c. there were occasions when two responses were published as one reply (257–262, 275–276);

d. in one letter the words were changed and rewritten by Ginzburg (279–280);

e. on two occasions qualifying paragraphs in a response were omitted when published (262–265, 269–271); and

f. Ginzburg testified as to one response that he "didn't even consider" whether it was true or false, and that all he cared about was printing what the man said (291–293).

Nothing said here about the material just described is meant to indicate any opinion as to how the issue of actual malice ought to be, or will be, decided.

The decision is simply that plaintiff has shown enough to go to the jury on the issue of actual malice.

■ In deciding motions for summary judgment we are told that "the inferences to be drawn from the underlying facts * * * must be viewed in the light most favorable to the party opposing the motion". United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Even if it were felt unlikely that plaintiff would prevail at trial (and no opinion is here expressed one way or the other) we are told:

> "The fact that the trial court believed it unlikely that the * * * [party opposing the motion] would prevail at trial is insufficient to authorize summary judgment against him." Jobson v. Henne, 355 F.2d 129, 133 (2d Cir. 1966).

■ The issue of actual malice on the part of defendants seems peculiarly inappropriate for disposition by summary judgment because it concerns "motive, intent, and subjective feelings and reactions". Empire Electronics Co. v. United States, 311 F.2d 175, 180 (2d Cir. 1962); see also 6 Moore's Federal Practice (2d ed.) 2581. The Supreme Court has cautioned against summary judgment "where motive and intent play leading roles". Poller v. Columbia Broadcasting Co., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

Moreover, since the question deals with the state of mind of defendants Ginzburg and Boroson, plaintiff ought to be able to have their testimony before the trier of fact in open court on cross-examination.

> "[i]f * * * the court is of the opinion that since the knowledge is in the * * * control of the moving party, who is, of course, an interested party, and that the opposing party may be able to establish his claim * * * if afforded the opportunity to cross-examine the moving party in court, * * * the court may deny the motion for summary judgment." 6 Moore's Federal Practice (2d ed.) 2877. See Colby v. Klune, 178 F.2d 872 (2d Cir. 1949).

Libel actions seem to me to be especially appropriate for trial to a jury. In this connection, it is interesting to note that in England libel actions are among the few civil actions which must be tried to a jury if one party so desires and if the case does not involve a prolonged examination of documents or accounts or a scientific or local investigation which may be inconveniently made with a jury. Administration of Justice (Miscellaneous Provisions) Act, 1933, 23 & 24 Geo. 5, c. 36, § 6.

There are significant differences between the case at bar and Washington Post Co. v. Keogh, 365 F.2d 965 (D.C. Cir. 1965), but if there were not I would decline to follow that decision.

Defendants contend (Supplemental Memorandum, pp. 25–26) that "since the Sullivan and Garrison cases, a public official no longer can have a cause of action for libel per se" and thus, under New York law, "the plaintiff must point to a specific loss of reputation or some economic loss as the basis for a recovery". New York law is to the contrary. Raffa v. Shilbury, 24 A.D.2d 814, 263 N.Y.S.2d 876, 877 (3d Dept., 1965); Cabin v. Community Newspapers, Inc., 50 Misc.2d 574, 270 N.Y.S.2d 913 (Sup.Ct., Nassau County, 1966).

For the reasons given, the motion is denied.

The Court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292 (b).

So ordered.