## GREGORY E. DELIA *v.* BARRY R. BERKEY

[No. 150, September Term, 1978.]

*Decided December 19, 1978.*

.The cause was argued before MOORE, MELVIN and LISS, JJ.

*Robert W. King,* with whom was *Arthur M. Kravetz* on the brief, for appellant.

*William A. Ehrmantraut,* with whom were *Donahue & Ehrmantraut* on the brief, for appellee.

LISS, J., delivered the opinion of the Court. MELVIN, J., concurs and filed a concurring opinion at page 55 *infra.*

It was the Bard who best expressed the wounds that slander does inflict. He said:

> Slander,
> Whose edge is sharper than the sword,
>     whose tongue
> Outvenoms all the worms of Nile,
>     whose breath
> Rides on the posting winds and doth
>     belie
> All corners of the world.[1]

Appellant, Gregory E. Delia, allegedly wounded by a defamation of his character by Barry R. Berkey, appellee, appeals from the ruling of Judge Jacob S. Levin of the Circuit Court for Prince George's County, who granted a motion for summary judgment in favor of the appellee in the defamation action filed by the appellant.

On September 25, 1976, Gregory E. Delia, a police officer in the Prince George's County Police Department, was on uniformed patrol at about 10:15 P.M., operating in the southbound lane of Interstate 495, when he observed an automobile being operated in excess of the posted speed limit. The automobile was being driven by Dr. Barry R. Berkey, a certified psychiatrist with offices in Virginia; Dr. Berkey's wife and son were passengers. The appellant intercepted the appellee and required him to pull his car to the shoulder of the road. The officer's car was then positioned to the rear of Dr. Berkey's, with the patrol car's two high intensity lights and a spotlight being directed toward the Berkey car.

The officer stated that he informed Dr. Berkey that he was going 70 miles an hour in a 55 mile zone and would be issued a ticket for the violation. The doctor requested the officer to turn off his high intensity lights but the latter refused to do so, contending that they were needed for his own safety and that of Dr. Berkey and his passengers. The officer then directed the doctor to remain with his own car while he prepared the ticket in the patrol car. After doing so, the

---

1. William Shakespear, *Cymbeline* III, iv, 35.

officer presented the ticket to the appellee, requesting that he sign it and advising him that his signature on the ticket was not an admission of guilt but represented a promise by the appellee to appear in court or pay the fine required by the violation. Dr. Berkey again asked that the lights on the patrol car be extinguished, and the officer again refused. The doctor inquired as to the candlepower of the bright lights and upon being advised by the officer that he did not know, the doctor wrote, "does not know" on the summons book. Officer Delia advised Dr. Berkey that if he did not sign the summons he would be arrested. The doctor asked for the officer's name and badge number and was advised that they were on the summons. Dr. Berkey then asked, "Do my wife and I look like criminals?", and the officer replied, "I do not know what a criminal looks like." The doctor then signed the summons, was handed his ticket, and drove off.

Five days after the incident, Chief John Rhodes of the Prince George's County Police Department received the following letter from Dr. Berkey:

Dear Chief Rhoades:

This is to request an investigation on Private Gregory Delia. The reason for this request has to do with the officer's behavior when he stopped my car by signalling with lights flashing from his patrol car. He asked for my license and automobile registration but gave me *no reason* (until asked); he had high power spot lights directed at my car and upon request, he refused to deflect or turn them off. After writing up the summons, he *refused* to repeat his inaudible instructions and insisted I sign the summons immediately or that he would "take me in." Private Delia kept the high powered lights directed into my wife's eyes, my twelve year old son's eyes and my own — while he kept his back toward the beam. (I couldn't identify Private Delia if my life depended on it because of the blinding light).

I regard his behavior as abnormally cruel and inhumane, rude and insensitive, threatening and punitive. I neither look nor behave like a fugitive, but I, as well as my wife and son, were treated by Private Delia as such.

Partly because of my professional background and training, I question if this young officer is mentally deranged, if he is psychopathic and/or pathologically sadistic. This letter is to formally request a mental evaluation of Private Delia.

My speedometer read 60 mph (not 70 as I was told) and I had been maintaining this speed where safe, since leaving Salisbury, Md.

I shall look forward to your reply.

Sincerely,

Barry R. Berkey, M.D.

cc: The Honorable James Magruder Rea
Mr. Darryl L. Wyland, Esq.[2]

It was this letter which represented the gravamen of the first count of the second amended declaration filed by the appellant in which he sought damages for libel from the appellee.

As a result of the letter, the Prince George's County Police Department directed one of its representatives to communicate with Dr. Berkey to investigate his complaint. In the course of a telephone conversation with the investigator, Dr. Berkey characterized Officer Delia as having "a real emotional problem" and being "abnormally cruel and inhumane, rude and insensitive, threatening and punitive". From the officer's refusal to turn out his high intensity lights and from his conduct at the traffic stop scene, the doctor concluded that Delia was "mentally deranged, psychopathic and/or pathologically sadistic." This conversation was the

2. Though copies of the letter were sent to the Honorable James Magruder Rea and Mr. Darryl L. Wyland, the record does not reveal any involvement by either of these gentlemen in the events that transpired in this case.

basis of Officer Delia's claim for damages for slander in the second count of his second amended declaration.

The appellee filed an affidavit, a deposition of the appellant, and a motion for summary judgment on the ground that the appellant was a public official as a matter of law and that in order to recover, the public official was required to prove actual malice on the part of the appellee. The appellee also asserted that actual malice is defined at law as "a knowing falsity or reckless disregard for truth." Appellee further alleged that there was no genuine issue as to any material fact in regard to the malice issue, and that he was therefore entitled to judgment as a matter of law. The appellant filed an objection to the motion for summary judgment and after a hearing, the trial court granted the motion. It is from that action that this appeal is taken.

The sole issue to be determined in the case *sub judice* is whether the trial court erred in granting appellee's motion for summary judgment. We think it did err and shall reverse.

The Court of Appeals on numerous occasions has stated that the function of the summary judgment procedure is not to try the case or decide the issues of fact raised; it is merely to determine whether there is an issue of fact to be tried, and if there is none to cause judgment to be issued accordingly. *Brewer v. Mele,* 267 Md. 437, 298 A. 2d 156 (1972); *Broadwater v. Arch,* 267 Md. 329, 297 A. 2d 671 (1972); *Greenwell v. American Guaranty Corp.,* 262 Md. 102, 277 A. 2d 70 (1971).

In ruling on a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and even if it is found unlikely that the party opposing the motion will prevail at trial, this is insufficient to authorize a summary judgment against him. *Goldwater v. Ginzburg,* 261 F. Supp. 784 (S.D.N.Y. 1966); *Merchants Mortgage v. Lubow,* 275 Md. 208, 339 A. 2d 664 (1975).

The Court of Appeals has held that a police officer when acting within the scope of his law enforcement function is a "public official." *Robinson v. Board of County Commissioners,* 262 Md. 342, 278 A. 2d 71 (1971); *Harris v.*

*Mayor of Baltimore,* 151 Md. 11, 133 A. 888 (1926). We have followed these holdings in the very recent case of *Karangelen v. Snyder,* 40 Md. App. 393, 391 A. 2d 474 (1978). Accordingly, the test applied in determining the governing legal principles in this case is the standard enunciated by the Supreme Court of the United States in *New York Times v. Sullivan,* 376 U. S. 254, 84 S. Ct. 710 (1964), which held that public officials may sue for libel only when they can demonstrate that the alleged libel was made with "actual malice," which is defined to mean publication of false statements with actual knowledge of their falsity or with reckless disregard for their truth or falsity. In *Garrison v. Louisiana,* 379 U. S. 64, 74, 85 S. C. 209 (1964), the Court refined its standard, stating that "only those false statements made with the high degree of awareness of their probable falsity demanded by *New York Times* may be the subject of either civil or criminal sanctions."

*New York Times, supra,* and its progeny impose a heavy burden on the public official or public figure who seeks redress for an alleged defamation. The defamed public official or public figure must prove not only that the publication was false but that it was knowingly so or was circulated with reckless disregard for truth or falsity. *See Cox Broadcasting Corp. v. Cohn,* 420 U. S. 469, 95 S. Ct. 1029 (1975). The procedural effect of *New York Times* was a shifting of the burden of proof in cases involving alleged defamation of public officials or public figures. We said in *Kapiloff v. Dunn,* 27 Md. App. 514, 530, 343 A. 2d 251 (1975):

> In order to protect the interest of the First Amendment in the free dissemination of information concerning the conduct of a public official or public figure, the Supreme Court shifted that burden. It is now incumbent upon the public official or public figure plaintiff to prove that the statements concerning his conduct were false, and that they were published with actual malice.

The New York Times or the so called "constitutional malice" doctrine focuses primarily on the element of scienter.

Knowing falsity or reckless disregard for truth involves proof of a "high degree of awareness of . . . probable falsity . . . ," *Garrison v. Louisiana, supra,* such that the defendant "entertained serious doubts as to the truth of his public action." *St. Amant v. Thompson,* 390 U. S. 727, 731, 88 S. Ct. 1323 (1968). *Accord, Marchesi v. Franchino,* 283 Md. 131, 387 A. 2d 1129 (1978).

With knowledge of the legal principles we have here stated, the trial court was under an obligation to determine whether the various depositions, answers to interrogatories, and affidavits raised a genuine evidentiary conflict on the issue of malice. The rule is clear that if the pleadings, depositions, admissions, and affidavits show that there is no genuine dispute as to any material fact, then the moving party is entitled to a judgment as a matter of law. If the various documents and exhibits show a genuine conflict, then the summary judgment should be denied and the issues should be submitted to the trier of the facts. *Wolfe v. Lamar & Wallace, Inc.,* 261 Md. 174, 274 A. 2d 121 (1971); *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563 (1956).

There are comparatively few cases which have considered the issue of the granting of a motion for summary judgment when a subjective state of mind is the gravamen of the complaint. In a well reasoned opinion, the District Court for the Southern District of New York discussed this issue in *Goldwater v. Ginzburg, supra,* at 788:

> The issue of actual malice on the part of defendants seems peculiarly inappropriate for disposition by summary judgment because it concerns "motive, intent, and subjective feelings and reactions". *Empire Electronics Co. v. United States,* 311 F.2d 175, 180 (2d Cir. 1962); *see also* 6 Moore's Federal Practice (2d ed.) 2581. The Supreme Court has cautioned against summary judgment "where motive and intent play leading roles". *Poller v. Columbia Broadcasting Co.,* 368 U. S. 464, 473, 82 S. Ct. 486, 491, 7 L.Ed.2d 458 (1962).[3]

---

**3.** See White Motor Co. v. United States, 372 U. S. 253, 259, 83 S. Ct. 696 (1963).

Moreover, since the question deals with the state of mind of defendants Ginsburg and Boroson, plaintiff ought to be able to have their testimony before the trier of fact in open court on cross-examination.

"[i]f * * * the court is of the opinion that since the knowledge is in the * * * control of the moving party, who is, of course, an interested party, and that the opposing party may be able to establish his claim * * * if afforded the opportunity to cross-examine the moving party in court, * * * the court may deny the motion for summary judgment." 6 Moore's Federal Practice (2d ed.) 2877. *See Colby v. Klune,* 178 F.2d 872 (2d Cir. 1949).

It is clear that the question of malice is for the jury only when evidence exists warranting the submission to the triers of facts of the issue of actual malice by reason of knowledge of falsity or reckless disregard for truth. *Shapiro v. Health Insurance Plan,* 163 N.E.2d 333 (1959); *Trails West, Inc. v. Wolff,* 298 N.E.2d 52 (1978).

There are two sharply divergent versions of the incident which was the basis for the publication of the allegedly liberous and slanderous remarks in this case. If the explanation by the police officer as to the facts and circumstances surrounding the issuance of the traffic citation is correct, then the letter in which the appellee characterized the police officer's behavior as "abnormally cruel and inhumane, rude and insensitive, threatening and punitive" would permit the inference that the appellee entertained serious doubts as to the truth of his publication at the time it was made. Additionally, if the officer's version of the facts surrounding the stopping of the appellee's vehicle is to be believed, then the suggestion in the appellee's letter, "partly because of my professional background and training that I question if this young officer is mentally deranged, if he is psychotic and/or pathologically sadistic", together with the appellee's request for "a mental examination of Private Delia" would at the very least raise the factual issue of whether the communication to the officer's superior was

made with knowledge of its falsity or with such reckless disregard for truth or falsity as to amount to actual malice.

The appellee's version of what happened is, of course, substantially different from that of the appellant, and we believe this raises a genuine dispute as to the facts of the case which precluded the granting of appellee's motion for summary judgment. Appellee was, therefore, not entitled to a summary judgment as a matter of law.

> *Judgment reversed.*
> *Case remanded for further proceedings.*
> *Costs to be paid by appellee.*

*Melvin, J., concurring*:

I agree that the motion for summary judgment was erroneously granted by the court below. I reach that result, however, by a somewhat different route.

The defendant's motion for summary judgment alleged two alternative grounds for granting the motion:

1. "That there is no genuine issue as to any material facts in regard to the issue of defendant's malice, and that therefore the defendant is entitled to a judgment as a matter of law". In support of this allegation the motion alleged that in a deposition in which he was questioned by appellee's counsel, appellant "was unable to cite a single fact which would support" the allegation of his declaration that appellee "made the false, malicious and defamatory statements contained in the aforesaid letter with knowledge that these were false . . . ."

2. "That there is no genuine issue as to any material fact in regard to the issue of *absolute privilege,* and that therefore, the defendant is entitled to a judgment as a matter of law". (Emphasis added).

56

As to the first ground, it is clear from the plaintiff's deposition that the questions posed to him by the defendant's counsel assumed that the allegedly defamatory portions of the letter of September 30, 1977, contained in the second and third paragraphs of the letter, were statements of fact and not expressions of opinion. The defendant-appellee argued below and now on appeal that because the plaintiff-appellant testified in his deposition that he had no *facts* to support his allegation, made in his declaration, that the defendant-appellee *"knew* when he made those *statements* that they were false" (emphasis supplied), he was therefore entitled to summary judgment. The appellee argues, in effect, that unless his opponent can prove knowing falsity, he loses. This argument overlooks the complete definition of actual malice that must be proved in a defamation action by a public figure. To prove that a defamatory false statement was made with "actual malice" the public figure plaintiff must prove that the statement was made *either* "with knowledge that it was false *or* with reckless disregard of whether it was false or not". (Emphasis added) *New. York Times Co. v. Sullivan,* 376 U. S. 254, 279-280. Thus, proving knowing falsity is not an indispensable element of the proof of actual malice. The plaintiff-appellant also alleged in his declaration, alternatively, that the statements were made "in reckless disregard for the truth".

The plaintiff was not obliged to prove his entire case before trial. The fact that pre-trial discovery proceedings may show that he is unable to say that when the appellee made the allegedly defamatory statements he (appellee) knew them to be false, does not mean that for that reason alone the appellee is entitled to judgment as a matter of law.

As to the second ground urged for granting the motion for summary judgment, the appellee alternatively argues that the allegedly defamatory portions of the letter are merely expressions of opinion and "are characterizable as 'fair comment' on the conduct of a public official, and as such merit a constitutional qualified privilege". Citing *Kapiloff v. Dunn,* 27 Md. App. 514, 343 A. 2d 251 (1975), *cert. denied* (1976), ("Opinions based on false facts are protected if the publisher

was not guilty of actual malice with regard to these supportive facts", *id.* at 531-532), the appellee asserts, without discussion, that "even if one assumes that the brief summary of facts in paragraph 1 of the appellee's letter are false", the appellant has failed in his burden "to adduce evidence on the malice issue sufficient to overcome the Motion for Summary Judgment".

In *Kapiloff, supra,* at 533, Judge Orth, speaking for the Court, said:

> ". . . Where the statements, however, are actual expressions of opinion, based upon stated or readily known facts, their objective truth or falsity depends on the veracity of these underlying facts. Therefore, any determinations with regard to falsity or the presence of actual malice must look to the stated or known facts which form the basis for the opinion . . . ."

It would seem to follow, therefore, that, viewed in the light most favorable to the appellant (against whom the motion was filed), if the facts that purport to support an expression of opinion are false, there arises at least an inference that these statements of fact, made by one who had first hand knowledge of the entire incident, were made with either knowing falsity or reckless disregard of their truth or falsity. As already noted, the appellant was not required to prove his entire case before trial, and at the summary judgment stage is entitled, as the party against whom the motion was filed, to all inferences favorable to his cause. *Merchants Mtg. Co. v. Lubow,* 275 Md. 208, 339 A. 2d 664 (1975); *Hill v. Lewis,* 21 Md. App. 121, 318 A. 2d 850 (1974).

For the above reasons, I agree that the judgment must be reversed and the case remanded for further proceedings.