834 A.2d 962

**Richard T. ROSS,**

v.

**AMERICAN IRON WORKS, et al.**

No. 2611, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Oct. 30, 2003.

Herman M. Braude (Braude & Margulies, on the brief), Washington, DC, for appellant.

Lori Vaughn Ebersohl (Jennifer K. Cannon, Shaw Pittman L.L.P., on the brief), McLean, VA. Leonard A. Sacks (Leonard A. Sacks & Associates, P.C., on the brief), Rockville, for appellee.

Argued before DAVIS, SONNER and DEBORAH S. EYLER, JJ.

DAVIS, J.

Appellant Richard T. Ross filed complaints in the Circuit Court for Prince George's County against his co-partner appellee Philip Savopoulos, their partnership, appellee Inwood Associates (Inwood), and appellee American Iron Works (AIW) on August 27, 2001. In his complaint against Savopoulos, appellant requested a judicial dissolution of Inwood, an accounting of its assets, and a sale of the partnership's property. Appellant, asserting his rights as a former shareholder of AIW, alleged that he had not received payment for his 270 shares that were purchased through a merger between AIW and AIW Holdings Inc. on September 7, 1999. AIW filed a motion to dismiss on November 13, 2001 and Savopoulos and Inwood filed an Answer on November 30, 2001. AIW then filed a Motion for Summary Judgment on December 31, 2001. Upon Savopoulos's motion, the trial judge (Casula, J.) was specially assigned and, additionally, the two cases were consolidated by an order dated February 12, 2002. After a period of discovery, Savopoulos and Inwood filed their own Motion for Summary Judgment on October 31, 2002. Appellant timely responded to both motions and, on November 18, 2002, the motions were argued before the trial judge. On December 20, 2002, the trial judge granted summary judgment in favor of all of the appellees. Appellant timely noted an appeal on January 10, 2003.

Appellant presents two questions for our review, which we rephrase as follows:

I. Did the trial court err by granting summary judgment in favor of Savopoulos and Inwood?

II.  Did the trial court err by granting summary judgment in favor of AIW?

We answer the first question in the affirmative and the second question in the negative.  Accordingly, we shall reverse in part and affirm in part the judgment of the trial court and remand for proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Prior to 1986, appellant and Savopoulos were involved in several inter-related business entities.  They were partners in P & R Properties (P & R), a partnership that owned an improved parcel of land located at 900 Evarts Street in Northeast Washington, D.C. (Evarts Street Property).  Appellant and Savopoulos, along with a third individual, were shareholders in AIW, a Maryland corporation that was involved in the business of fabricating and installing metal products for construction projects in the Washington, D.C. area.  In addition to being shareholders, they held positions on the board of directors and as officers.  Appellant and Savopoulos were also shareholders in Milestone Industries, Inc. (Milestone), another Maryland corporation, which provided management services to AIW.

On December 1, 1986, appellant and Savopoulos entered into a Partnership Agreement (Agreement) to form Inwood, a new partnership in which they were equal partners.  By virtue of the Agreement, Inwood acquired several parcels of real property as well as equipment used in the metal fabrication process.  On December 29, 1986, Inwood purchased 68,925 square feet of improved land located at 3201 Kenilworth Avenue, Bladensburg in Prince George's County, Maryland (Inwood Property).  Inwood then entered into a Commercial Lease Agreement with AIW, on January 1, 1987, to lease the Inwood Property for AIW's use.  Milestone and AIW entered into a Management Agreement on March 20, 1987, whereby Milestone would provide management services such as marketing, bidding, and supervising for AIW's business.  After the formation of Inwood, the business conducted by appellant

and Savopoulos consisted of three inter-related entities: Inwood owned the land and equipment, AIW provided the labor for the fabrication and installation of the metal products, and Milestone oversaw the management aspects of AIW's business.

In late 1995, the business relationship between appellant and Savopoulos began to sour. On December 7, 1995, a special meeting of AIW shareholders was held that resulted in appellant's removal from the board of directors and as an officer of AIW. Additionally, the new directors of AIW terminated the Management Agreement with Milestone.

The Commercial Lease between Inwood and AIW expired on December 31, 1995 and was renewed via a Rider made effective on the same day for a period of three years. The monthly rent was set at $6,500. Savopoulos signed the Rider acting as both a general partner for Inwood and president of AIW.

Savopoulos informed appellant, in a letter dated January 5, 1996, that Citizens Bank, the holder of the note on the Inwood Property, was preparing to foreclose on the property because payments were past due. Savopoulos stated in the letter that he would be willing to personally guarantee up to fifty percent of the loan. On January 19, 1996, correspondence from Citizens Bank indicated an offer to extend the maturity date of the loan for a period of six months from the original due date of December 15, 1995. The extension was contingent upon appellant and Savopoulos each personally guaranteeing fifty percent of the loan. Appellant signed the correspondence. Savopoulos's signature, however, does not appear on the document. Inwood was informed by counsel for Citizens Bank on February 8, 1996 that foreclosure proceedings had commenced on the Inwood Property. To avoid foreclosure, appellant, Savopoulos, and Inwood agreed to pay the entire amount of the loan in late March 1996. Appellant, Savopoulos, and Inwood paid $180,000, $170,000, and $18,225.73, respectively, to pay off the loan on the Inwood Property.

In a letter dated March 20, 1996, Savopoulos, as president of AIW, informed appellant that Inwood had defaulted on a promissory note, dated January 18, 1986 and secured by a deed of trust in the land records of Prince George's County on February 23, 1996. Counsel for appellant responded the next day in a letter asserting that appellant had no knowledge of any such promissory note or deed of trust.

On August 25, 1999, the Board of Directors for AIW approved a cash for stock merger between AIW and AIW Holdings, Inc., a Delaware corporation. On September 7, 1999, the shareholders of AIW approved the Merger Agreement. Appellant, who was present with counsel when the vote was taken, voted against the Merger Agreement. His voting shares, however, were insufficient to overcome the two-thirds majority. Appellant also filed written objections at the meeting. The Merger Agreement provided that AIW Holdings, Inc. would become the "merged corporation" and that AIW would continue its corporate existence as the "successor corporation." Pursuant to the terms of the Merger Agreement, all of the capital stock held in AIW immediately prior to the merger would be "cancelled and cease to exist." The holder of such capital stock would then be entitled to $2,583.33 per share as compensation. The compensation would be paid over the course of ten years in ten equal installments without interest. Under the terms of the Merger Agreement, appellant, who owned 270 shares at the time of the merger, was entitled to $679,499.10 over ten years in equal installments without interest. The State Department of Assessments and Taxation (SDAT) approved the Merger Agreement on September 8, 1999.

By letter dated September 23, 1999, appellant informed AIW that he formally objected to the merger for two reasons. First, he claimed that the amount of compensation was inadequate because the $2,583.33 per share was well below the fair market value of his capital stock. Appellant also contended that the ten-year pay-out plan without interest further devalued the compensation for his shares.

**8**

On August 27, 2001, appellant filed a complaint against Savopoulos and Inwood.[1] In the complaint, Count I alleged that a judicial dissolution of Inwood was necessary due to the hopeless deadlock between the two parties and Savopoulos's "aggressive actions" toward Ross that negatively affected Inwood's business. Counts II and III requested that the lower court order an accounting and sale of all of the partnership property. On the same day, appellant also initiated an action against AIW, alleging that appellant had not been compensated for his 270 shares of capital stock in accordance with the Merger Agreement between AIW and AIW Holdings, Inc. Appellant requested judgment for $2,583.33 per share for his 270 shares or $679,499.10, plus interest from September 7, 1999.

After appellees were served with process in middle to late October 2001, they filed their respective responsive pleadings. AIW filed Motions to Dismiss and for Sanctions on November 13, 2001. Savopoulos and Inwood filed their Answer to Complaint and Counterclaim on November 30, 2001. The counterclaim requested that a judicial dissolution be granted in favor of Savopoulos because of alleged wrongdoings by appellant towards Inwood. On December 31, 2001, AIW filed a Motion for Summary Judgment, to which appellant responded on January 2, 2002.

By an order dated February 12, 2002, the trial judge was specially assigned and appellant's cases against Savopoulos, Inwood, and AIW were consolidated into a single proceeding.

---

1. This was the latest in a series of lawsuits between appellant and appellees. On November 27, 1995, appellant filed a complaint against AIW to enjoin the impending shareholders meeting on December 7, 1995. The request for the injunction was denied. On March 8, 1996, appellant filed a complaint against Savopoulos in his capacity as a shareholder of AIW. The two cases were consolidated and ultimately dismissed by the trial judge on August 2, 2001. Appellant filed another lawsuit on behalf of Milestone against AIW on March 8, 1996. That case was also dismissed by the trial judge on August 2, 2001. The trial judge who presided over the three previous cases presided over the instant proceedings. In 1996, Savopoulos filed an action requesting dissolution of Inwood. From the record before us, it appears that his complaint was ultimately dismissed for lack of prosecution.

After a period of discovery, Savopoulos and Inwood filed a Motion for Summary Judgment on October 31, 2002. Appellant responded, on November 15, 2002, with a Motion in Opposition to the Motion for Summary Judgment. On November 18, 2002, the motions for summary judgment came before the trial judge for argument. After holding the motions under advisement, the trial judge issued his rulings on December 20, 2002. The trial judge granted the Motion for Summary Judgment filed by Savopoulos and Inwood. He also ordered that Inwood be dissolved and that Savopoulos be permitted to possess and control the partnership's assets and business. He further ordered an accounting of Inwood's assets and liabilities, including "real property wrongfully appropriated from the partnership by [appellant]." Appellant was required to produce all records to assist in the accounting, including any records pertaining to the Evarts Street Property and any partnership funds in his possession and control. Savopoulos was ordered to post a bond in the amount of appellant's partnership interest. Finally, the trial judge granted AIW's Motion for Summary Judgment.

This appeal followed.

## LEGAL ANALYSIS

Before we address the substantive issues in this matter, we must consider a preliminary issue regarding the manner in which the trial judge rendered his decision. Appellant alleges that the grant of summary judgment in favor of appellees was improper because the trial judge failed to set forth any reasons supporting his decision in the December 20, 2002 order. Appellee counters that a trial judge is not necessarily required to state the reasoning in support of a grant of summary judgment and a reviewing court may affirm the grant if the reasons are readily apparent from the record.

It is well settled that, " '[i]n appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting the summary judgment.' " *Lovelace v. Anderson*, 366 Md. 690, 695, 785 A.2d 726 (2001)(quoting

*PaineWebber.v. East,* 363 Md. 408, 422, 768 A.2d 1029 (2001)).
Ordinarily, we are not permitted to " 'speculate' " as to the
trial judge's reasoning. *Lovelace,* 366 Md. at 695, 785 A.2d
726 (quoting *Gresser v. Anne Arundel County,* 349 Md. 542,
552, 709 A.2d 740 (1998)). Here, our review of the trial court's
grant of summary judgment in favor of appellees is made
more difficult by the failure of the trial judge to state any
grounds for his decision. Citing *Bond v. NIBCO,* 96 Md.App.
127, 133, 623 A.2d 731 (1993), we observed in *Williams v.
Prince George's County,* 112 Md.App. 526, 538–39, 685 A.2d
884 (1996):

> It would certainly be preferable to have before us the basis
> for the circuit court's order. This would not only give us
> the benefit of the circuit court's reasoning as to why sum-
> mary judgment was proper but also make it clear whether
> the lower court found any of the asserted grounds lacked
> merit, i.e., did not support the grant of summary judgment.
> In the absence of any such discussion, we must assume that
> the circuit court carefully considered all of the asserted
> grounds and determined that all or at least enough of them
> as to merit the grant of summary judgment were meritori-
> ous.

More to the point, we are required, under the circumstances
extant, to review each count of appellant's complaints, the
arguments of the parties and the evidence in the record to
determine whether any one of the arguments advanced by the
moving parties would be "a legally correct and factually
sufficient basis for the judgment." *Magee v. DanSources
Technical Svcs., Inc.,* 137 Md.App. 527, 548, 769 A.2d 231
(2001). In an exercise of our discretion, therefore, we decline
to reverse the grant of summary judgment on the basis of the
lower court's failure to set forth its reasoning, but rather, we
shall address the substantive issues regarding the propriety of
the court's ruling.

# I

Appellant claims that Savopoulos and Inwood failed to meet
their burden to show that there was no genuine dispute as to

any material fact regarding the dissolution of the partnership in favor of Savopoulos. Savopoulos and Inwood, however, assert that they met their burden by showing evidence of appellant's wrongdoing concerning the partnership.

A party to an action is entitled to summary judgment if "there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law." Md. Rule 2–501(a). We review a trial court's grant of summary judgment "to determine whether a dispute of material fact exists, and whether the trial court was 'legally correct.' " *Thacker v. City of Hyattsville*, 135 Md.App. 268, 285–86, 762 A.2d 172 (2000). A material fact has been defined by Maryland courts as "a fact the resolution of which will somehow affect the outcome of the case." *Grimes v. Kennedy Krieger Inst.*, 366 Md. 29, 72, 782 A.2d 807 (2001)(quoting *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985)). We are required to consider any pleadings, motions, depositions, and affidavits that were properly in the record before the trial court. *Ashton v. Brown*, 339 Md. 70, 79, 660 A.2d 447 (1995). In reviewing these documents, we are mindful that all facts and reasonable inferences therefrom must be construed in favor of the non-moving party. *Id.* Ultimately, if any genuine dispute of material fact exists, then summary judgment should not be granted and the case should proceed to trial. *See Delia v. Berkey*, 41 Md.App. 47, 51, 395 A.2d 1189 (1978).

There is no dispute that Inwood is a Maryland partnership and, as a result, is governed by the provisions of the Maryland Uniform Partnership Act (UPA).[2] *See* Md.Code (1999 Repl.

---

2. As of December 31, 2002, the provisions of the UPA were superseded by the Maryland Revised Uniform Partnership Act (RUPA). *See* C.A. §§ 9–1001(b), 9A–101 *et seq.* The RUPA applies to all partnerships after December 31, 2002. C.A. § 9A–1224(b). The RUPA may have been applied to Inwood prior to December 31, 2002 if it had elected to be governed by the new statutes pursuant to C.A. § 9A–1224(c). The parties do not claim nor does the record reflect that Inwood made an election to be governed by the RUPA. In the absence of an election, C.A. § 9–1001 provides that "this [UPA] is applicable only to a partnership formed before July 1, 1998." Thus, Inwood's formation in 1986 brings it within the purview of the UPA. Furthermore, the savings clause in

Vol., 2003 Supp.), Corps. & Ass'ns (C.A.) §§ 9–101 *et seq.* Section 9–603 of the UPA provides that a partnership will be judicially dissolved upon application by a partner and a showing that

(1) A partner has been declared a lunatic in any judicial proceeding or is shown to be of unsound mind;

(2) A partner becomes in any other way incapable of performing his part of the partnership contract;

(3) A partner has been guilty of such conduct as tends to affect prejudicially the carrying on of the business;

(4) A partner willfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him;

(5) The business of the partnership can only be carried on at a loss; or

(6) Other circumstances render a dissolution equitable.

The UPA contemplates that, after dissolution, one or more partners will continue the business of the partnership to wind up its affairs. *See* §§ C.A. 9–604 to 9–612. The right to wind up the partnership affairs is delineated in C.A. § 9–608, which states that, "[u]nless otherwise agreed, the partners *who have not wrongfully dissolved* the partnership . . . ha[ve] the right to wind up the partnership affairs." (Emphasis added.) Additionally, in the event of a dissolution, the property of the partnership may be applied to its liabilities and, then, any remaining surplus is paid to the remaining partners. C.A. § 9–609(a). However, in the event of a dissolution "caused in contravention of the partnership agreement," the partners who have wrongfully caused the dissolution can be liable to the

C.A. § 9A–1205, which states that the RUPA "does not affect an action or proceeding commenced or right accrued before this title takes affect," applies to the current proceedings. Here, the cause of action commenced prior to December 31, 2002 and, thus, the RUPA has no affect on this action. In sum, we will apply the provisions of UPA and not the RUPA for the purposes of our analysis.

non-offending partners for breach of the agreement. C.A. § 9–609(b)(1)(ii). Thus, partners who commit wrongful acts that cause the dissolution of a partnership are only entitled to the value of their partnership interest minus "any damages caused to his copartners by the dissolution." C.A. § 9–609(b)(3)(ii). Therefore, a proper analysis of whether a partnership should be dissolved, who should continue the partnership's business and to what extent a partner is entitled to partnership property necessarily entails a determination of which partner, if any, wrongfully caused the dissolution of the partnership.

In his complaint, appellant requested that the trial court dissolve Inwood on several grounds. First, appellant alleged that he and Savopoulos are "hopelessly deadlocked" and "are unable to effectively manage the affairs of the partnership." Second, appellant believed Savopoulos's actions as president of AIW, including appellant's removal as officer and director in 1995 and divestiture of his shares in September 1999, prejudicially affected the partnership's business and made the carrying on of the partnership's business "not reasonably practicable." C.A. § 9–603(a)(3),(4). Finally, appellant alleged other "equitable" grounds, citing the lack of trust between appellant and Savopoulos and the extensive history of litigation between them.

In their answer to appellant's complaint, Savopoulos and Inwood filed a counterclaim that also requested a judicial dissolution because of appellant's alleged wrongful conduct toward the partnership. Specifically, they stated that appellant had misappropriated and converted funds and property from Inwood's accounts for his personal use. Savopoulos and Inwood also alleged that appellant's actions in filing several previous lawsuits against Savopoulos, Inwood, and AIW had created an atmosphere of tension and mistrust between the two partners. Finally, appellant's actions had allegedly violated the partnership agreement, warranting a judicial dissolution. Savopoulos requested that a decree of judicial dissolution be granted in his favor.

The allegations were reiterated in more detail in a Motion for Summary Judgment filed by Savopoulos and Inwood, which was primarily supported by an affidavit executed by Savopoulos on October 23, 2002. In the affidavit, Savopoulos claimed that the Evarts Street Property, originally owned by P & R, was transferred to Inwood some time after Inwood's formation. In November 1995, Savopoulos alleges that appellant started to collect the rental payments from the Evarts Street Property for himself instead of distributing the payments to Inwood. According to Savopoulos, appellant then "sold or otherwise transferred or re-titled" the Evarts Street Property to another individual to the exclusion of Savopoulos and Inwood.

Appellant countered the allegation in his response to the motion for summary judgment with his affidavit dated November 15, 2002. He stated that the Evarts Street Property was never actually transferred to Inwood in 1986, although it was the intention of the parties to do so at the time. Further, appellant claimed that the Evarts Street Property continues to be in the control and possession of Inwood and, contrary to Savopoulos's assertions, it has never been sold or re-titled.

Savopoulos also alleged in his affidavit that appellant had misappropriated funds from Inwood's accounts for his personal use around December 1995 and has continuously refused to replace the funds. Appellant's response in his affidavit explains that, at the time that the Inwood property was in danger of foreclosure, Inwood had failed to pay its December 1995 and January 1996 mortgage payments. To avoid foreclosure, appellant claims that he transferred $40,090 from one of Inwood's accounts to a new Inwood account to ensure that the mortgage payments and other obligations were paid. Appellant also alleged that Savopoulos's refusal to sign the agreement with Citizens Bank, on January 19, 1996, put the Inwood Property, Inwood's primary asset, at the risk of foreclosure.

Savopoulos also claimed in his affidavit that appellant had initiated numerous frivolous lawsuits against him to the detriment of Inwood and other related entities. Appellant denied

the claim in his affidavit. Additionally, Savopoulos charged appellant with attempting to recruit several AIW employees and was successful in recruiting one such employee. Appellant responded in his affidavit that, while he did hire one of AIW's employees, he did not "wrongfully" attempt to hire AIW employees or act in bad faith. Savopoulos further asserted that appellant had "unlawfully disseminated false and inaccurate information about [Savopoulos]" for the purpose of strengthening appellant's position in the disputes with AIW and Savopoulos. In his affidavit, appellant denies Savopoulos's claim and counters that Savopoulos damaged appellant's reputation by allegedly telling the branch manager at Citizens Bank that appellant had embezzled partnership funds. Appellant asserted that the statement was untrue.

Appellant also alleges that Savopoulos acted improperly to the detriment of Inwood's interests. He claims, in contravention of the Partnership Agreement, that Savopoulos has denied appellant access to Inwood's books and records. Allegedly, appellant has attempted to enter the Inwood Property for this purpose and has been repeatedly denied entrance to the property. Additionally, appellant charges Savopoulos with entering into "self-serving" agreements in his dual capacities as president of AIW and general partner of Inwood. Specifically, appellant refers to the December 31, 1995 Rider to the Commercial Lease Agreement. The Rider, which bears only the signatures of Savopoulos in the dual capacities of Inwood's general partner and AIW's president, sets the monthly rent for the Inwood Property at $6,500. Appellant claims that this was a unilateral two-thirds reduction in rent from the previous rent of $20,000 per month to the detriment of Inwood. Finally, appellant challenges the existence of an alleged promissory note (Note) from Inwood to AIW dated January 18, 1996, in the amount of $275,252.52 and recorded in the land records on February 23, 1996. Appellant claims to have been "unaware" of any such Note but contends that, if actually executed and recorded nonetheless, Savopoulos has engaged in "self-dealing" to Inwood's detriment.

The trial judge's order granting summary judgment in favor of Savopoulos also granted him the right to continue the partnership in possession and control of the partnership assets. Additionally, the trial judge ordered an accounting of the assets and liabilities of Inwood including "the funds profits and real property wrongfully appropriated from the partnership by [appellant]." In the absence of any stated grounds for the trial judge's decision, the reasonable inference is that the trial judge found that there was no genuine dispute as to a material fact that appellant had wrongfully caused the dissolution of Inwood.

In finding no genuine dispute, the court erred. Documentary support in the record for most of the competing accusations set forth in the affidavits of Savopoulos and appellant is scarce, at best. The supporting documents relied upon by the parties consist of the Partnership Agreement, letters written to and from the two partners, and withdrawal and deposit slips, none of which conclusively establish the degree of culpability of either partner. The trial judge was left to rely primarily on two affidavits filed by opposing sides with multiple competing accusations of wrongful conduct. Granting summary judgment in favor of Savopoulos necessarily implies that the trial judge determined Savopoulos's affidavit to be more credible than appellant's affidavit. However, the Court of Appeals has held that,

[i]f the affidavit filed or other evidence show a genuine conflict, the court should deny the motion [for summary judgment]. The court does not attempt to decide any issue of fact or of credibility, but only whether such issues exist. This procedure is not a substitute for trial but merely a hearing to decide whether a trial is necessary.

*Strickler Eng'g Corp. v. Seminar, Inc.*, 210 Md. 93, 100, 122 A.2d 563 (1956); *see also Pittman v. Atlantic Realty, Co.*, 359 Md. 513, 536–38, 754 A.2d 1030 (2000).

After numerous allegations and counter-allegations made by the parties and the evidence on the record below, it is apparent that the record is rife with genuine disputes of material

facts relating to the wrongful conduct of both partners. Thus, although there is no dispute as to a material fact on the issue of whether, under C.A. § 9–603, dissolution of the partnership is warranted by the submissions on the motion for summary judgment, determination of who should "have the right to wind up partnership affairs," i.e., "the partners who have not wrongfully dissolved the partnership" pursuant to C.A. § 9–608, is a matter which can only be resolved by an assessment of credibility by the fact finder. The question as to which partner wrongfully dissolved the partnership, therefore, cannot be resolved on a motion for summary judgment. Consequently, the trial judge was legally incorrect by granting the motion for summary judgment in favor of Savopoulos and Inwood, and we therefore reverse his decision.

## II

Appellant states that the grant of summary judgment in AIW's favor was improper because the trial judge incorrectly found that appellant's claim was time-barred as a matter of law. AIW counters that the trial judge's grant of summary judgment was proper because appellant had failed to file a petition for appraisal within fifty days of SDAT's acceptance of the Merger Agreement as required by C.A. § 3–208. Additionally, appellee states that appellant's claim is barred by *res judicata.*

## A

Initially, we address the *res judicata* claim raised by appellee. The elements of *res judicata* are: "1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits." *Colandrea v. Wilde Lake Community Ass'n, Inc.,* 361 Md. 371, 392, 761 A.2d 899 (2000).

There is no dispute that, on November 27, 1995, appellant filed an action against AIW seeking an injunction for the

impending shareholders' meeting that was to determine whether appellant would be removed from the board of directors and as an officer. The circuit court denied appellant's request and the meeting proceeded as scheduled. That case was later consolidated with another action that appellant filed against the shareholders of AIW, which included Savopoulos, in March 1996. The record indicates that, on January 28, 1997, discovery in the consolidated cases was stayed while the parties engaged in settlement discussions. Apparently, a settlement was never reached. In May 2001, appellant filed a motion to lift the stay and reopen discovery in the consolidated cases. On the same day, appellant filed an Amended Complaint setting forth new allegations arising from the September 7, 1999 merger and requesting that the trial court grant judgment in his favor in the amount of $2,583.33 per share. AIW subsequently filed a motion to strike the amended complaint on the basis that appellant's only remedy was the appraisal statutes in C.A. § 3–202 *et seq.*[3] Additionally, AIW asserted that appellant's new claims were barred by the doctrine of laches because he had allowed the litigation to languish for nearly five years and, thus, AIW would suffer serious prejudice if appellant, a competitor of AIW, would be permitted to reopen discovery and obtain confidential business documents.

On August 2, 2001, the trial judge granted AIW's motion to strike appellant's amended complaint and dismissed the consolidated cases. At this point, we note that the first two elements of *res judicata* have been satisfied because, in the instant proceedings, appellant has brought an identical claim against the same parties in the previous actions. However, the trial judge's order does not specify whether the dismissal was granted on the substantive issue that appellant has

---

**3.** The general right of an objecting stockholder to receive compensation for his or her shares is set forth in C.A. § 3–202(a), which states that "a stockholder of a Maryland corporation has the right to demand and receive payment of the fair value of the stockholder's stock from the successor if: (1) the corporation consolidates or merges with another corporation."

waived his rights pursuant to the appraisal statutes or simply because the amended complaint was filed in contravention of the doctrine of laches. As a result, the basis for the trial judge's dismissal is inconclusive.

Because of the trial court's failure to set forth its basis for granting summary judgment, we are unable to discern whether it was granted on the grounds of claim preclusion or on the actual merits. In our judgment, the ambiguity in the original dismissal prevents a conclusive determination that all of the elements of *res judicata* have been satisfied. Therefore, we shall presume that the trial judge's grant of summary judgment was not based on the principles of *res judicata.*

**B**

Pursuant to C.A. § 3–102(a)(2), "[a] Maryland corporation having capital stock may ... [m]erge into another Maryland or foreign corporation having capital stock." When a merger occurs, a corporation's stock "may be exchanged for or converted into" virtually any type of consideration including "[s]tock, evidence of indebtedness ... tangible or intangible property ... [m]oney" or "any other consideration." C.A. § 3–103(1)–(4). Any stockholder of a Maryland corporation that merges into another "has the right to demand and receive payment of the fair value of the stockholder's stock from the successor." C.A. § 3–202(a).

The right to fair value, along with the procedure for enforcing it, is set forth in C.A. §§ 3–202 to 3–213 titled, *"Rights of Objecting Stockholders."* First, C.A. § 3–203(a)(1) requires that "[a] stockholder of a corporation who desires to receive payment of the fair value of the stockholder's stock ... [s]hall file with the corporation a written objection to the proposed transaction ... at or before the stockholders' meeting at which the transaction will be considered." Second, the objecting stockholder "[m]ay not vote in favor of the transaction." C.A. § 3–203(a)(2). Next, the objecting stockholder, "[w]ithin [twenty] days after the Department [of Assessments and Taxation] accepts the articles for record, shall make a written

demand on the successor for the stockholder's stock, stating the number and class of shares for which the stockholder demands payment." C.A. § 3–203(a)(3). Finally, "a [stockholder] who has not received payment for his stock may petition a court of equity . . . for an appraisal to determine the fair value of the stock." C.A. § 3–208(a).

■ Maryland courts have repeatedly held that failure to strictly comply with this procedure results in a forfeiture of the objecting stockholder's rights. *Ash v. Citizens Building and Loan Ass'n of Montgomery County, Inc.*, 225 Md. 395, 401–02, 170 A.2d 750 (1961)(holding that objecting stockholders' failure to file petition for appraisal with appropriate court within fifty days after acceptance of the merger precluded enforcement of their rights); *Roselle Park Trust Co. v. Ward Baking Corp.*, 177 Md. 212, 221, 9 A.2d 228 (1939)(concluding that rights under the statute did not vest in objecting stockholders who failed to file a petition for appraisal within the statutory time period); *Homer v. Crown Cork and Seal Co.*, 155 Md. 66, 85–86, 141 A. 425 (1928)(observing that "these provisions of the statute assure to the minority stockholder a full, ample, and complete remedy to secure the fair value of his [or her] stock, with a provision for review"); *Pink v. Cambridge Acquisition, Inc.*, 126 Md.App. 61, 73–76, 727 A.2d 414 (1999)(holding that dissenting stockholders' accidental failure to file the demand letter on the correct entity precludes an enforcement of their rights under the statute); *Sornberger v. Chesapeake and Ohio Ry. Co.*, 81 Md.App. 14, 26–27, 566 A.2d 503 (1989)(holding that objecting stockholders' failure to file a written demand for payment is insufficient compliance to enforce the rights under the statute). When an objecting stockholder fails to file a petition for appraisal or withdraws a demand for payment, C.A. § 3–206 provides that the rights of the objecting stockholder "are restored in full," which means that the formerly objecting stockholder is entitled to "receive the dividends, distributions, and other rights he [or she] would have received if he [or she] had not demanded payment for his [or her] stock."

■ However, in very limited circumstances, equitable relief may be available to a dissenting stockholder. *See The Twenty Seven Trust v. Realty Growth Investors and RGI Holding Co., Inc.*, 533 F.Supp. 1028, 1036 (D.Md.1982); *Homer*, 155 Md. at 83–85, 141 A. 425; *Walter J. Schloss Assocs. v. The Chesapeake and Ohio Ry. Co.*, 73 Md.App. 727, 747, 536 A.2d 147 (1988). In *Homer*, the Court of Appeals pointed out that objecting stockholders requesting a court of equity to act on the basis of inadequacy of price was insufficient for a court to intervene. *Homer*, 155 Md. at 83–84, 141 A. 425. Instead, the Court explained that the directors of a corporation have a "statutory right" to approve a merger "unless [they act] *ultra vires*, illegally, or in bad faith." *Id.* at 84, 141 A. 425. Citing *Homer*, the United States District Court for the District of Maryland has opined that the statutory appraisal remedy was not exclusive "in cases of fraud, illegal purpose or other wrongful conduct by the majority or controlling shareholder." *The Twenty Seven Trust*, 533 F.Supp. at 1036.

■ In *Twenty Seven Trust*, the court went on to state that, under the facts of the case, a departure from the appraisal statutes was warranted because of "serious allegations of breach of fiduciary duty." *Id.* at 1039. Similarly, we have held that the appraisal remedy is not exclusive in light of alleged wrongdoing on the part of the majority shareholders in a merger. *See Schloss*, 73 Md.App. at 740, 536 A.2d 147. Specifically, we have stated that,

> [i]n nearly every case in which a court has allowed a dissenting minority stockholder to pursue relief other than payment of fair value, either the alternative relief allowed was to enjoin or upset the squeeze-out or such relief was unreasonable only because the defendants had successfully concealed the relevant facts until the challenged action had been consummated and could not practicably be set aside.

*Schloss*, 73 Md.App. at 741, 536 A.2d 147. Thus, the factual allegations supporting a claim for relief outside of the appraisal statute must be reviewed before a court grants equitable

relief for a dissenting minority stockholder. *See Id.* at 740, 536 A.2d 147.

In the case at hand, the record shows that appellant filed a written objection at the shareholders' meeting, did not vote in favor of the merger, and made a written demand for payment from AIW within twenty days after SDAT accepted the Merger Agreement. *See* C.A. §§ 3–203(a)(1)–(3). There is, however, no dispute that appellant failed to file a petition for appraisal within fifty days after SDAT's acceptance of the Merger Agreement as required by C.A. § 3–208. Thus, any statutory remedy available through an appraisal hearing is now foreclosed.

Instead, appellant has chosen to pursue equitable relief. He claims that an action in equity is appropriate because he does not dispute the fair market value of his shares, but, rather, challenges Article 7(iii)(y) of the Merger Agreement, which provides that the fair market value of appellant's shares will be paid in ten equal installments over as many years without interest. In essence, appellant is challenging the terms of the Merger Agreement that stipulate that his compensation will be paid over time without interest in lieu of a lump sum payment.[4]

To determine whether appellant's claim is appropriate for alternative relief, we reviewed the factual allegations in appellant's complaint to ascertain any credible claim of fraud, breach of fiduciary duty, or other wrongful conduct on the part of the majority shareholders and directors. Upon review, it is evident that the complaint is totally devoid of any cognizable claim for relief, much less allegations of fraudulent

---

4. Appellant attempts to rely on C.A. § 3–106 to support his argument for a lump sum payment of the fair market value of his shares. His reliance, however, is misplaced. The plain language of C.A. § 3–106 states that it applies to "the merger of a [ninety] percent or more owned subsidiary corporation with or into its parent corporation." Here, appellant fails to point to any facts nor do we perceive any facts in the record that suggest that the merger between AIW and AIW Holdings, Inc. was a merger between a subsidiary and a parent corporation. Thus, C.A. § 3–106 is inapplicable to the instant analysis.

or wrongful conduct on the part of AIW. Without any credible allegations of wrongdoing properly pled in appellant's complaint, we are constrained to conclude that there are no genuine disputes as to any material facts on this issue. Therefore, we are persuaded that the trial judge's grant of summary judgment in favor of AIW was legally correct.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEES.**