LUTHERVILLE SUPPLY & EQUIPMENT CO.
*v.* DIMON ET UX, ET AL.

[No. 356, September Term, 1962.]

*Decided June 28, 1963.*

The cause was submitted on the brief to HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

Submitted by *Carl A. Durkee, Wells, Durkee & Albert* and *David R. Stambaugh* for appellant.

Submitted by *Melvin J. Sykes* and *August A. Denhard* for Atlantic Federal Savings & Loan Assoc., part of appellees.

No brief and no appearance for Harry F. Dimon et ux, other appellees.

PRESCOTT, J., delivered the opinion of the Court.

A judge of the Circuit Court for Baltimore County sustained a demurrer to appellant's amended bill of complaint, which sought, *inter alia,* to set aside a deed to a husband and wife as in defraud of creditors, and it has appealed.

The bill alleged that: appellant is a Maryland corporation; the appellee, Harry F. Dimon, was one of its employees and over a period of time became its debtor. In one instance, he purchased goods and services for his personal use (totaling some $960.30), and, with appellant's consent, charged these items to it, with the understanding that he would repay the amounts expended. He borrowed sums aggregating $1,050 from it. He also borrowed $5,000 from a bank in Baltimore, and, upon nonpayment of the indebtedness, it was reduced to judgment and assigned to appellant for valuable consideration. None of said indebtedness has ever been paid.

The bill further alleged that subsequent to the time when appellant became his creditor, Dimon purchased real estate in Baltimore County making a down-payment of $5,000 with funds belonging solely to him, and caused title to be placed in his and his wife's names as tenants by the entireties. At the time of this transaction, Dimon was insolvent, or the transaction itself rendered him insolvent. His wife contributed nothing for the interest she received in the property. (There were also allegations in the bill concerning a purchase money mortgage, which has now been completely paid; and the parties agree that any questions relative to the rights of the mortgagee therein have become moot). A mortgage on said property was given, and, from time to time, was partially paid (it has now been paid in full) from the individual funds of Dimon. The whole transaction was completed with full knowledge of its details by Dimon's wife. It was executed with intent to hinder, delay and defraud

appellant from collecting its valid debt from Dimon, and it had that effect.

No brief was filed in behalf of the appellees. Appellant contends that the allegations of its complaint state a cause of action under Code (1957), Article 39B, Section 4 and also under Article 45, Section 1; and we are constrained to agree with appellant.

Section 4 provides:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

And Section 1 defines conveyance:

" 'Conveyance' includes every payment of money, assignment, release, *transfer,* lease, mortgage or pledge of tangible or intangible property * * *." (Italics ours.)

This statute is declaratory of the common law, and is construed liberally by this Court and the Courts elsewhere. As early as 1570 the Parliament declared void any conveyance made with intent "to delay, hinder or defraud creditors," excepting, however, from the operation of the statute any estate or interest conveyed "upon good consideration and bona fide" to anyone without notice of the fraud. 1 *Alexander's British Statutes* (Coe's Ed.), 499-545; Statute 13 Eliz., Ch. 5. The object of the statute was to protect creditors from fraudulent conveyances by debtors to friends or relatives upon the pretext of discharging a moral obligation. It is an offspring of the broad principle that the law requires every person to be "just before he is generous," and this is especially true when the object of his "benevolence" is an attempt to bestow a benefit upon himself and upon his wife without any consideration from her.

*Savings Bank v. Sauble,* 183 Md. 628, 39 A. 2d 862, stated the principle in this manner:

"The law is now firmly established that no man, upon the pretext of liberality, can give away property

> which in equity and good conscience ought to be used to pay his debts. It is a settled principle that a voluntary conveyance is *prima facie* in fraud of existing creditors of the grantor without regard to his actual intention."

The principle is generally held to be broad enough to be applicable to cases where the purchase price is paid by a debtor and title taken in the name of another for the purpose of defrauding a creditor of the person furnishing the consideration. *First Nat. Bank of Jackson v. Short,* 27 S. W. 2d 668 (Ky.) ; *Englander v. Jacoby,* 28 A. 2d 292 (N. J. Eq.). Compare *Hewett v. Continental Supply of Huntsville, Inc.,* 127 So. 2d 834 (Ala.). In *Hubbard v. Lindenfeld,* 249 N. W. 839 (Mich.), the Court quoted 30 C. J., *Fraudulent Conveyances,* 574, as follows: " 'Where the circumstances are such that it would be fraudulent as to the creditors of the husband to take the entire title in the name of the wife, it is no less a fraud upon them for the title to be taken in the name of husband and wife jointly.' " See also *Simon v. Sorrentino, et al.,* 20 A. 2d 805 (Pa. Super.). We hold that the allegations of the bill of complaint were sufficient to state a cause of action under Article 39B, Section 4. The down payment obviously was "a payment of money," or "conveyance," under the statute, and each payment made upon the mortgage with the husband's money was likewise such "a payment of money," or "conveyance," when the property was held as tenants by the entirety.

We turn now to the question of the applicability of Article 45, Section 1. For much the same reasons as stated above, the bill, we think, stated a cause of action under this statute, which, in part, states: "* * * that no acquisition of property passing from one spouse to the other, shall be valid if the same has been made or granted in prejudice of the rights of subsisting creditors, * * *." [1] This statute, like Section 4 of Article 39B, is to be liberally construed so as to effectuate its purpose. There can be little doubt that there was an "acquisition of property passing from" the husband to the wife, when the husband paid $5,000 of his individually-owned money and

---

1. No question relative to the three-year provision in the statute is here involved.

received a deed to himself and wife as tenants by entireties; and there was also such an acquisition of property each time the husband made a payment on the mortgage, when the title was held as stated above. The fact that the property did not pass *directly* from one spouse to the other is not controlling. *Manning v. Carruthers,* 83 Md. 1, 34 A. 254; *Robbins v. Dorsey,* 150 Md. 265, 132 A. 633. Compare *Ressmeyer v. Norwood,* 117 Md. 320, 83 A. 347; *Bradford v. Harford Bank,* 145 Md. 653, 125 A. 719. If this were not so, the objective of the statute could be circumvented by the simple expedient of first conveying to a straw party and then having the straw party convey to the other spouse. The bill further alleges, and the demurrer admits, that the "passing" of the property was effectuated for the purpose of hindering, delaying and defrauding the appellant, a subsisting creditor, from collecting its just claims against the husband. We hold that the allegations of the bill were sufficient to withstand its challenge by the demurrer.

> *Order sustaining demurrer reversed and suit remanded for further proceedings. Costs to be paid by appellees, Harry F. and Lillian M. Dimon.*