489 A.2d 48

**Ruth Ellen PEARCE**

v.

**John G. MICKA, et ux.**

**No. 875, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

March 13, 1985.

Stephen L. Prevas, Baltimore, for appellant.

Charles T. Vekert, Ellicott City (Sheldon H. Laskin and Rupli, Vekert & Laskin on brief), Ellicott City, for appellees.

Argued before BLOOM and ROSALYN B. BELL, JJ., and FREDERICK A. THAYER III, Chief Judge of the Fourth Judicial Circuit, Specially Assigned.

BLOOM, Judge.

After over two years of unsuccessful attempts to collect a substantial judgment awarded her in September 1979, appellant, Ruth Ellen Pearce, brought an action in the Circuit Court for Howard County against the judgment debtor, John G. Micka, and his wife, Paula Micka, the appellees herein, for (1) a determination that payments made by John on the joint mortgage indebtedness of John and Paula as well as deposits made by John into Paula's personal bank

account were fraudulent as to creditors; (2) an order authorizing execution upon real estate owned by John and Paula as tenants by the entireties; and (3) a judgment against Paula. The result of that suit was a judgment against Paula for $392.05 to be paid to the trustee in bankruptcy for John G. Micka. Appealing from that judgment, appellant raises the following issues:

1. To what extent do payments made exclusively by husband, debtor, during insolvency, on joint mortgage indebtedness of husband and wife, on property held as tenants by the entireties, constitute fraudulent conveyances by husband to wife, subject to attack by husband's creditor under *Annotated Code of Maryland,* Article 45, Section 1 and the Maryland Uniform Fraudulent Conveyance Act?

2. Did the chancellor err in failing to grant judgment against appellee, Paula Micka, upon appellant's claim that deposits of funds by appellee, John G. Micka, a debtor of appellant, into the personal checking account of his wife, appellee, Paula Micka, at a time when he was insolvent, constituted fraudulent conveyances under Article 45, Section 1 of the *Annotated Code of Maryland* and the Maryland Uniform Fraudulent Conveyance Act?

*Facts*

John G. Micka, then an attorney, was retained by appellant to represent her as a defendant in a civil action. He neglected to file a responsive pleading and a judgment was entered against Mrs. Pearce. She, in turn, sued Mr. Micka for malpractice and eventually obtained a judgment against him in the total amount of $113,500, of which $96,000 was awarded as compensatory damages and $17,500 as punitive damages.

In an attempt to collect her judgment, appellant instituted supplementary proceedings to discover assets and she attached Micka's business checking accounts. Her efforts

proved fruitless; Micka was insolvent. To date, appellant has been able to recover only a small part of the judgment.

The debtor's financial problems worsened when he was disbarred in late 1980. He had no source of income after that time. He and his wife were confronted with the difficult problem of trying to keep up the mortgage payments on their jointly owned home in Columbia, Maryland, which was mortgaged to Family Savings and Loan Association of Virginia.

Despite their financial difficulties, the Mickas managed to make the following mortgage payments during the period relevant to this appeal:

| Year | Payments | Principal | Interest | Escrow for Taxes and Insurance |
|------|----------|-----------|----------|-------------------------------|
| 1979 | $ 9,386.61 | $ 615.66 | $ 6,439.80 | $ 2,028.60 |
| 1980 | 8,574.60 | 576.08 | 5,518.61 | 2,266.27 |
| 1981 | 7,170.74 | 520.83 | 4,471.86 | 1,996.70 |
| Totals | $25,131.95 | $ 1,712.57 | $16,430.27 | $ 6,291.57 |

All of the monthly payments in 1979 and six of the monthly payments in 1980 were made by John Micka by checks written on his law firm checking account. The remaining payments were cash payments made with funds borrowed from friends and relatives.

In her suit against Mr. and Mrs. Micka, appellant asserted that the mortgage payments to Family Savings and Loan of Virginia were fraudulent conveyances under Maryland Uniform Fraudulent Conveyance Act, Md.Com.Law Code Ann. §§ 15–201 through 15–214, as well as interspousal transfers of property to the prejudice of creditors prohibited by Md.Ann.Code art. 45, § 1. She also contended that money Mr. Micka deposited into his wife's personal checking account from 1979 to 1981 violated art. 45, § 1 and the Uniform Act.

At the trial, Mrs. Micka's check registers were admitted into evidence and the testimony of Mr. and Mrs. Micka was elicited to explain the source of funds deposited into Mrs. Micka's checking account. They also testified about the funds they borrowed to make mortgage payments.

As reflected by Mrs. Micka's check registers, approximately $48,000 was deposited into her personal checking account during the three year period in question. Mrs. Micka's testimony as to her earnings and income from all sources could account for only about $23,000. Deposits known to have been made from Mr. Micka's funds accounted for $6,000 or $7,000. No one was able to account for the remaining $18,000.

Appellant argued that deposits into Mrs. Micka's account not otherwise accounted for should be deemed to have been contributed by Mr. Micka. Colloquies between the chancellor and counsel during the course of the trial made it clear that the chancellor rejected that argument and specifically found that only the deposits that were proven to have come from Mr. Micka's funds were attributable to him. He subsequently determined that *those* deposits (totalling between $6,000 and $7,000) were not fraudulent transfers because the funds were used to provide necessaries for the debtor's wife and children. As to the mortgage payments, the chancellor determined that only those portions of the mortgage payments made by Micka with his own funds that reduced the principal of the loan could be deemed to be fraudulent transfers. The chancellor reasoned that the balance of the mortgage payments went to other bona fide creditors, such as the county (property taxes), the mortgagee (interest) and the insurer of the property (insurance premiums). Payments made by Mr. Micka from his own income in 1979 and 1980 reduced the principal indebtedness by $784.09 ($484.27 in 1979; $299.82 in 1980). The judgment was for one-half of that total, $392.05. Mortgage payments made with borrowed money were held not to constitute fraudulent transfers of property because the money never belonged to Micka in the first place. By the time the judgment was rendered, Mr. Micka had filed for bankruptcy. The bankruptcy court lifted its automatic stay on appellant's petition for permission to pursue her remedies in the state court, but the bankruptcy judge directed that any money recovered by appellant should be for the

benefit of the trustee in bankruptcy. Accordingly, the chancellor in these proceedings ordered that the judgment be paid to the trustee.

The original appeal to this court, noted in November of 1983, was dismissed because the decision appealed from had not yet been formalized into a written order from which an appeal would lie. Appellant then petitioned the Circuit Court for Howard County for appropriate relief, a written order was prepared, and this appeal was then taken.

## I. *Mortgage Indebtedness*

■ Appellant initially asserts that the chancellor erred in finding that only $392.05 of the mortgage payments made by appellees from 1979 to 1981 were in derogation of the rights of creditors. She argues that a full one-half of the mortgage payments made during those three years, or $12,565.97, should have been viewed as fraudulent conveyances.

Appellant's claim is based on Md.Ann.Code art. 45, § 1,[1] and the Maryland Uniform Fraudulent Conveyance Act, Md.Com.Law Code Ann. §§ 15–201 through 15–214.

Article 45, § 1, provided:

The property, real and personal, belonging to a woman at the time of her marriage, and all the property which she may acquire or receive after her marriage, by purchase, gift, grant, devise, bequest, descent, in the course of distribution, by her own skill, labor or personal exertions, or in any other manner, shall be protected from the debts of the husband, and not in any way be liable for the payment thereof; provided, that no acquisition of property passing from one spouse to the other, shall be valid if the same has been made or granted in prejudice of the right of subsisting creditors, who, however, must assert their claims within three years after the acquisition of the

---

1. Article 45 was repealed *in toto* by the Acts 1984, Ch. 296, § 1, as of October 1, 1984. A provision similar to Art. 45, § 1 is currently codified in Md.Fam.Law Code Ann., § 4–301(d).

property, or be absolutely barred, and, for the purpose of asserting their rights under this section, claims of creditors not yet due and matured shall be considered as due and matured.

The Maryland Uniform Fraudulent Conveyance Act provides, in pertinent part:

§ 15–201. DEFINITIONS.

\*    \*    \*    \*    \*    \*

(c) *Conveyance.*—"Conveyance" includes every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or encumbrance.

(d) *Creditor.*—"Creditor" means a person who has any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent.

(e) *Debt.*—"Debt" includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent.

\*    \*    \*    \*    \*    \*

§ 15–203. FAIR CONSIDERATION.

Fair consideration is given for property or an obligation, if:

(1) In exchange for the property or obligation, as a fair equivalent for it and in good faith, property is conveyed or an antecedent debt is satisfied;

\*    \*    \*    \*    \*    \*

§ 15–204. CONVEYANCE BY INSOLVENT.

Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

\*    \*    \*    \*    \*    \*

§ 15–209. RIGHTS OF CREDITORS WHOSE CLAIM HAS MATURED.

(a) *Setting aside or disregarding conveyance.*—If a conveyance or obligation is fraudulent as to a creditor,

the creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title immediately or mediately from such a purchaser:

(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy this claim; or

(2) Disregard the conveyance and attach or levy execution on the property conveyed.

Appellant relies upon *Lutherville Supply & Equipment Co. v. Dimon,* 232 Md. 195, 192 A.2d 496 (1963), and *McCaslin v. Schouten, et al.,* 294 Mich. 180, 292 N.W. 696 (1940), in which the Supreme Court of Michigan applied that state's Uniform Fraudulent Conveyance Act to a fact situation similar to the case before us. Both cases are distinguishable from the case *sub judice;* neither of them involve the question raised by appellant.

In the *Lutherville Supply & Equipment Co.* case, a creditor of an insolvent debtor complained that the debtor had purchased real estate which he caused to be conveyed to him and his wife as tenants by the entireties. The $5,000 down payment was made with the debtor's own funds and the balance of the purchase price was secured by a mortgage which, from time to time, was partially paid out of the debtor's individual funds. The Court held that the creditor's complaint stated a cause of action under both the Uniform Fraudulent Conveyance Act (then Md.Ann.Code art. 39B) and Md.Ann.Code art. 45, § 1. With respect to the Uniform Act, the Court stated:

The down payment obviously was "a payment of money," or "conveyance" under the statute, and each payment made upon the mortgage with the husband's money was likewise such "a payment of money" or "conveyance," when the property was held as tenants by the entirety.

232 Md. at 198, 192 A.2d 496.

Turning its consideration to the applicability of article 45, § 1, the Court stated:

This statute, like Section 4 of Article 39B, is to be liberally construed so as to effectuate its purpose. There can be little doubt that there was an "acquisition of property passing from" the husband to the wife, when the husband paid $5,000 of his individually-owned money and received a deed to himself and wife as tenants by entireties; and there was also such an acquisition of property each time the husband made a payment on the mortgage, when the title was held as stated above. The fact that the property did not pass *directly* from one spouse to the other is not controlling.

*Id.* at 198–9, 292 N.W. 696 (emphasis in original).

The Court merely reversed an order sustaining a demurrer to the creditor's bill of complaint. It did not decide whether the entire mortgage payment made from the debtor's funds or only that portion thereof which reduced the principal indebtedness was a "conveyance" under the Uniform Act or an "acquisition of property passing from" the debtor to his wife under art. 45, § 1.

In one respect, the facts in *McCaslin* are similar to the facts in this case. There, as here, the debtor and his wife had acquired property as tenants by the entireties before the debtor became insolvent. The Supreme Court of Michigan, concluding that mortgage payments made by the debtor with his own funds after he became insolvent were fraudulent as to creditors, held that the creditor was entitled to a judgment against the debtor and his wife in "the amount in which the Shoutens' equity in the entireties property was unjustly increased by Mr. Shouten's unlawful use of his individual funds." 292 N.W. at 700. Unlike the case at bar, however, *McCaslin* did not involve monthly mortgage payments which included interest and funds to be escrowed for payment of taxes and insurance premiums. The debtor sold his own securities and used some of his wife's money to make a series of payments that were apparently applied wholly to the principal indebtedness.

In the case *sub judice*, only a small part of Micka's mortgage payments were applied to principal, the bulk of each payment being applied to interest and to an escrow account for payment of taxes and insurance. We agree with the chancellor's conclusion that payment of interest, taxes and insurance premiums did not constitute fraudulent conveyances under the Uniform Act. Family Savings and Loan Association (the mortgagee), Howard County (the taxing authority) and the insurance carrier, as well as Mrs. Pearce, were creditors of Micka; and the Act makes it clear that preference of one creditor over another is not fraudulent. A conveyance (which includes payment of money—§ 15–201(c)) by an insolvent debtor is fraudulent as to creditors, without regard to the debtor's actual intent, if the conveyance is made without "fair consideration" (§ 15–204); satisfaction of an antecedent debt (which includes any legal liability, whether matured or unmatured—§ 15–201(e)) is "fair consideration." § 15–203. It may be argued, of course, that even the principal payments should not be deemed to be fraudulent conveyances because the debtor received in exchange "a fair equivalent" for them, § 15–203; but as the *McCaslin* court points out, what constitutes "a fair equivalent" or "fair consideration" under the Uniform Act must be determined from the standpoint of creditors.

> By his payment of $9,600 on the mortgage indebtedness, Mr. Schouten rendered himself to that extent less solvent, because prior thereto he had assets in his own right available to his creditors to the extent of $9,600, but after the payment of the mortgage covering property held by the entireties, not only was this amount of Schouten's assets placed beyond the reach of his creditors, but not even Schouten himself, without the consent of his wife, could apply this or an equivalent amount in satisfaction of his debts. The additional interest which Mr. Schouten received in the entireties property by paying $9,600 of his money on the mortgage debt was not to his creditors "a

fair equivalent" or a "fair consideration" for the $9,600 of personal assets which he possessed prior thereto.
292 N.W. at 699.

Appellant fares no better under art. 45, § 1. To the extent that the debtor's funds increased his wife's equity in the property, there was, in the language of that statute, "an acquisition of property passing from one spouse to the other" that was "made or granted in prejudice of the rights of subsisting creditors." *Lutherville Supply & Equipment Co. v. Dimon, supra.* Mrs. Micka, however, acquired no additional property by her husband's payments of such debts as interest, taxes and insurance premiums.

Appellant's claim was for one-half of all mortgage payments made during a three year period. Having concluded that the chancellor correctly determined that mortgage payments were fraudulent conveyances or interspousal transfers prejudicial to creditors only to the extent that they added to the owners' equity in the property, we turn now to his determination that the principal repayment portions of only eighteen of the thirty-six mortgage payments made by the insolvent debtor during the three years preceding the bringing of this action could be considered. The chancellor was perfectly correct in concluding that payments made from funds that did not belong to Mr. Micka could not constitute fraudulent conveyances by him or an interspousal transfer of property. Such funds were never his to convey; since they were never subject to the reach of his creditors, no disposition of such funds could be fraudulent or prejudicial to a creditor. As for the chancellor's finding that only eighteen of the thirty-six payments were made with Mr. Micka's funds, it is sufficient for us merely to note that there was evidence that twelve mortgage payment checks in 1979 and six in 1980 were drawn on Mr. Micka's business checking account. His testimony indicated that all other payments were made with borrowed funds. There being evidence to support the chancellor's findings of fact, those findings will not be disturbed on appeal. Md.Rule 1086.

We do find, however, that the chancellor erred in limiting recovery to one-half of the amount by which the mortgage principal indebtedness was reduced. That holding may have been consistent with the rights of creditors under art. 45, § 1 on the theory that Mrs. Micka only acquired an enhanced interest in her estate to the extent of one-half of the increased equity in tenancy by entireties property. But the Uniform Fraudulent Conveyance Act is not concerned with the extent to which the debtor's wife is benefitted; it is concerned with the extent to which the debtor's property has been placed beyond the reach of the creditors. As the Supreme Court of Michigan explained in *McCaslin v. Schouten, supra,* the entire amount by which the debtor reduced his mortgage debt on tenancy by entireties property is a fraudulent conveyance because that is the amount that was once available to creditors and is no longer available to them.

Instead of awarding a judgment against Mrs. Micka for $392.05, the chancellor should have entered judgment against both defendants for $784.08 or otherwise subjected their property to a lien in the full amount of $784.08. It will be necessary for us to vacate the judgment and remand for entry of a judgment or order consistent with this opinion.

## II. *Payments to Mrs. Micka*

Appellant next asserts that the chancellor erred in two respects with regard to his conclusion that the $6,000 deposited into Mrs. Micka's checking account was not fraudulently conveyed. She questions 1) the finding that $6,000 was deposited and argues that this figure was entirely too low when all the evidence is considered and 2) the finding that none of the money was fraudulently conveyed.

Mrs. Micka's check registers reflected that deposits far in excess of $6,000 were made into her account after her husband became insolvent. But there was evidence presented from which the chancellor could conclude that some deposits into Mrs. Micka's checking account were from sources other than her husband, including loans, her

salary as a teacher, extra money she earned tutoring, and an insurance settlement she received. Therefore, the chancellor's finding of fact as to the amount deposited by the judgment debtor was not clearly erroneous. We will not disturb it. Md.Rule 1086. By the same token, we will not disturb the chancellor's finding that the $6,000 was spent for food, clothing, shelter and other necessaries for the debtor and his family since there was direct testimony to that effect. Md.Rule 1086.

We agree with the chancellor's decision that deposits of money used by Mr. Micka to support his family did not constitute fraudulent conveyances because, within the meaning of the Uniform Act, there is "fair consideration" for the payment of money by a debtor to satisfy his obligation to provide necessaries for his wife and children. Md.Com.Law Code Ann., §§ 15–201(c) and (e), 15–203, 15–204. Nor do such expenditures constitute interspousal transfers of property to the prejudice of creditors within the meaning of art. 45, § 1. Providing necessaries for a family is not a transfer of property from one spouse to another.

JUDGMENT VACATED AND CASE REMANDED FOR ENTRY OF A JUDGMENT OR ORDER CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLANT.