839 A.2d 755

Gale MOLOVINSKY, et al.

v.

The FAIR EMPLOYMENT COUNCIL OF GREATER WASHINGTON, INC., et al.

No. 949, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Dec. 22, 2003.

Martin S. Protas, Germantown, for Appellant.

Warren Kaplan (Washington Lawyers Committee for Civil Rights and Union Affairs on the brief), Washington, DC (Robert M. Marino, Dexter U. Nutall, Reed Smith LLP on the brief), Washington, DC, for Appellee.

Panel: HOLLANDER, SALMON, and BARBERA, JJ.

BARBERA, Judge.

Appellants, Gale S. and Arlene M. Molovinsky, appeal from an order of the Circuit Court for Montgomery County awarding appellees, The Fair Employment Council of Greater Washington, Inc., et al., ("the Council"), $152,628.78 in attorneys' fees and costs. The Molovinskys present nine questions for our review which, with the exception of minor stylistic changes, we set forth as they appear in the Molovinskys' brief:

I. Whether the transfer of assets from the testamentary trust established under the last will and testament of Ruth Irene Molovinsky and pursuant to a trust termination agreement dated December 17, 1998, to Arlene Molovinsky, a contingent beneficiary of the trust, constituted a "conveyance" from Gale Molovinsky to Arlene Molovinsky, his wife, within the meaning of Sections 15–201, 15–204, 15–206 and 15–207 of the Maryland Fraudulent Conveyance Act.

II. If the transfer was a conveyance to Arlene Molovinsky, whether under Sections 15–204 and 15–206 of the Act, Arlene Molovinsky gave consideration, fair or otherwise, as defined in Section 15–203 of the Act, for the conveyance of the trust assets to her.

III. If Arlene Molovinsky did not give consideration, fair or otherwise, for the conveyance of the trust assets to her, was consideration required under the circumstances of the transaction complained of by the Molovinskys.

IV. Whether Gale Molovinsky was insolvent at the time he renounced his interest in the trust.

V. Whether the Council was barred from the relief sought by equitable reasons, *inter alia*, by the failure to bring a petition for attorneys' fees for nearly six (6) years after the underlying case was decided, and by the failure to serve Gale Molovinsky with the petition for attorneys' fees in the underlying action.

VI. Whether the Council was barred from the relief sought by the doctrine of accord and satisfaction.

VII. Whether the Council was barred from the relief sought by perpetrating a fraud upon Gale Molovinsky, to wit, by procuring a settlement of the underlying judgment without disclosing the claim for attorneys' fees.

VIII. Whether the trial court erred in awarding a money judgment in favor of the Council when the relief sought was an order setting aside the alleged "conveyance."

IX. Whether the trial court erred in permitting, over objection, the testimony of Donald LaBarre, through the reading of his deposition taken in a prior action, thereby denying the Molovinskys' counsel the opportunity to cross-examine said witness.

For the reasons that follow, we affirm the judgment of the circuit court.

## FACTS AND LEGAL PROCEEDINGS

The litigation underlying this appeal commenced in 1991, when the Council sued Gale Molovinsky for violations of the District of Columbia Human Rights Act ("the Act"), relating

to Molovinsky's operation of his employment counseling business. A 1993 jury trial resulted in a verdict for the Council against Molovinsky in the amount of $79,000.00 ("the original judgment"). Molovinsky appealed the original judgment to the District of Columbia Court of Appeals.

While the appeal was pending, the Council filed, on April 1, 1994, a fee petition pursuant to the Act, seeking an award of fees and expenses of $72,000.00. This amount represented services rendered up to and including the jury trial. The superior court stayed action on the petition pending resolution of the appeal.

On October 3, 1996, the District of Columbia Court of Appeals affirmed the jury's verdict. *Molovinsky v. Fair Employment Council of Greater Washington, Inc.*, 683 A.2d 142 (D.C.1996). One week later, on October 10, 1996, Molovinsky directed Lafayette Federal Credit Union to remove his name from savings account No. 2822005, which he held jointly with his wife, Arlene.

In 1997, the Council commenced discovery in aid of execution of the original judgment. In the course of discovery, the Council issued interrogatories, a document request, and deposed Molovinsky about his assets.

### The Trust

Gale Molovinsky was a beneficiary of a testamentary trust established under the will of his mother, Ruth Irene Molovinsky. By its terms, the trust's income was to be paid to Melvin Molovinsky, Gale's father, for the balance of his life, then to Gale, until he reached age sixty. At that time, the trust was to terminate and the corpus distributed to Gale. The trust further provided that if Gale died before reaching age sixty, the income would go to his wife, Arlene, for the balance of her life and, upon her death, the entire proceeds were to be distributed *per stirpes* to their children. The trustee was Donald LaBarre, a Pennsylvania lawyer who had represented Ruth and Melvin Molovinsky.

Melvin Molovinsky died in 1994, at which time Gale became the sole income beneficiary of the trust. The trust contained about $500,000.00 in municipal bonds, and the trust income distributed to Gale amounted to approximately $35,000.00 annually.[1]

### Events Leading to the Termination of the Trust

In May 1997, LaBarre produced, at Gale's behest, a first draft of the trust termination agreement. Under this draft, the trust was to be terminated and the entire proceeds placed in a new Merrill Lynch account in the joint names of Gale and Arlene Molovinsky. According to the deposition testimony of LaBarre offered at trial in this case, Gale was concerned that his creditors could reach the Merrill Lynch account if it was registered under the joint names of his wife and himself. Gale sought LaBarre's opinion as to whether the assets would be immune from his creditors if the account was in the Molovinskys' joint names.

Sometime in 1997, Gale informed LaBarre that the District of Columbia Court of Appeals had affirmed the 1993 jury verdict. In light of the now-final unpaid judgment, LaBarre declined to proceed with the trust termination agreement.

In February 1998, the Council took Gale's deposition in aid of execution of the judgment. At the deposition, the Council learned that Melvin Molovinsky had died four years earlier, that Gale had become the sole income beneficiary of the trust, and that he was entitled to receive the monthly income from it.

Three months later, the Council instituted garnishment proceedings against LaBarre, as trustee of the trust. In response, LaBarre notified Gale that, "until this matter gets resolved," LaBarre would have to cease sending him payments of trust income.

---

1. The record contains differing assertions concerning the average annual trust income. The court, however, found that the income was approximately $35,000.00. Neither party contests this finding, so we accept it as fact. Md. Rule 8–131(c).

By October 1998, Gale and LaBarre had agreed that La-Barre would invade the corpus of the trust to pay the judgment, and the interest thereon, so that Gale could resume receiving the monthly trust income payments. Gale told LaBarre, however, that, in connection with paying the judgment, he wanted (1) a release of any claim by the Council for attorneys' fees; and (2) an agreement that the Council would not file any objection to his pending petition to get reinstated to the bar of the District of Columbia.[2]

LaBarre duly wrote to the Council's Pennsylvania attorney, Catherine Nelson. He advised her of Gale's offer to pay the entire amount of the judgment, plus accrued interest, in return for a "complete release" from any further claim of legal fees and assurance that the Council would not oppose Gale's reinstatement as a member of the District of Columbia bar.

After conferring with her co-counsel in Washington, D.C., Nelson told LaBarre that the issue of the attorneys' fees was being handled not by the Philadelphia law firm, but by the "civil rights attorneys" (Washington Lawyers Committee for Civil Rights, co-counsel for the Council in these proceedings) in Washington, D.C. Nelson further advised LaBarre that she was explicitly directed not to offer any release of the claim for fees. Instead, Gale would receive only a receipt reflecting the payment, and a praecipe marking the judgment as paid. In addition, there would be no promise not to oppose Gale's reinstatement to the bar.

Nelson followed this conversation with a letter to LaBarre confirming the conversation. That letter read, in part: "Upon full satisfaction of the judgments, Plaintiffs will issue a receipt of payment and arrange for the Court to mark the judgment satisfied and paid in full."

---

**2.** Gale Molovinsky was disbarred in the District of Columbia and in Maryland following his conviction in federal court of conspiracy to counterfeit. *See United States v. Molovinsky,* 688 F.2d 243 (4th Cir. 1982), *cert. denied,* 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983).

LaBarre gave this information to Gale. He nonetheless elected to go forward with the payment of the judgment, so he could resume obtaining income from the trust assets.

LaBarre returned to work on a revised trust termination agreement that would transfer all assets of the trust to Arlene. LaBarre completed the agreement and sent it to Gale on December 15, 1998. LaBarre later testified that he agreed to the premature termination of the trust in an effort to protect those trust assets that remained after the payment of the original judgment, from any of Gale's creditors or potential creditors. LaBarre testified that, based on his conversations with Gale, he understood Gale to be acting for the same reason.

LaBarre also testified that both he and Gale were aware at the time the agreement was being prepared that the Council's claim for attorneys' fees had not been acted upon by the District of Columbia Superior Court. LaBarre testified that he also was aware that, given the Council's pending fee claim, transferring the trust assets to Arlene could be viewed as a fraudulent conveyance.

On December 7, 1998, the trust termination agreement was executed. It provided that, after payment of the original judgment, the remaining assets, approximately $400,000.00, would be transferred to a new Merrill Lynch account that had been opened in the sole name of Arlene Molovinsky. Both before and after the transfer to Arlene, the $35,000.00 in annual income from the trust was used to pay the household expenses of the Molovinsky family.

### Events Following Termination of the Trust

In February 1999, LaBarre used the trust assets to pay the original judgment, plus accrued interest, for a total payment of $106,570.75. Shortly thereafter, the Council filed a praecipe marking the judgment satisfied.

One month later, the Council filed in the District of Columbia Superior Court a renewed and amended petition for attorneys' fees. The Council sought fees and expenses for the

entire case, including both the pre-judgment phase covered by the original fee petition filed in 1994, and the post-judgment phase covering the appeal and collection efforts. On May 9, 1999, the court (Bartnoff, J.) entered judgment against Gale on the fee petition in the amount of $152,628.78.

Gale filed a motion to vacate that judgment. He claimed that he had never been served with a copy of the amended fee petition, and argued, *inter alia,* that there should be no fee award because the Council had agreed (through LaBarre) to forego any request for fees in consideration of being paid the original judgment.

The Council filed an opposition to Gale's motion to vacate, and included an affidavit from Catherine Nelson. Nelson swore in her affidavit that she never made any such agreement with LaBarre; to the contrary, she had always told LaBarre that the attorneys' fees claim was not waived, and would be dealt with separately by her Washington, D.C. co-counsel. Gale did not file any counter-affidavit by LaBarre, nor did he reply to the Nelson affidavit in any way.

On June 30, 1999, the superior court (Bartnoff, J.) entered an order denying the motion to vacate. The court found that the amended fee petition had in fact been served on Gale, and found no merit to his additional arguments for vacation of the judgment.

In May 1998, not knowing that the trust had been dissolved, the Council once again initiated garnishment proceedings against the trustee, LaBarre. This time, LaBarre responded by saying that the trust had been terminated and the assets transferred to Arlene Molovinsky.

After learning of the circumstances surrounding the trust termination, the Council filed a fraudulent conveyance action in Pennsylvania, where the trust termination had taken place. The Molovinskys filed a motion to dismiss for lack of jurisdiction, in response to which the Council voluntarily dismissed the action.

On January 7, 2000, the Council re-filed the action in the Circuit Court for Montgomery County, where the Molovinskys reside. The three-count complaint alleged that the transfer of the trust funds constituted a fraudulent conveyance under Maryland's Uniform Fraudulent Conveyance Act.

On April 17, 2000, the Council filed a motion for summary judgment. The Molovinskys opposed the motion, and also filed a cross-motion for summary judgment.

The motions came on for a hearing on July 12, 2000. At its close, the court stated:

[I]t is the Court's determination that with respect to the issue of whether [there] was a transfer and/or a conveyance, that the [the Council's] motion for summary judgment at tab 14 shall be granted.

The Court determines based upon the undisputed facts before it that there is no material dispute of fact as to whether or not there was a transfer or a conveyance. The only dispute as we have debated is what is the legal significance of that which occurred.

It appears from the undisputed evidence that under the existence of the trust agreement which was under the will of [Gale's] mother, that the monies were held in trust, that the trustee had the right to invade—and that [Gale] was the income beneficiary, but that the trustee had the right in his sole discretion to invade the trust—the language was extremely broad—the trustee shall have full power and ability to the exercise in his sole and uncontrolled discretion to pay over to my said son, Gale Molovinsky, whatever part or parts or all of the principal the trustee shall deem wise and safely consistent with the future needs of my said son.

As well, he had other permissions and authorities to invade the trust.

What is evident from the undisputed facts here is that up to and culminating in December of 1998, December 17th, the trust terminating agreement I believe it is entitled, that there were discussions between the trustee and [Gale] about terminating the trust and it appears from that document

and from the other evidence presented that precisely what occurred was that at the request of [Gale] that the monies that were previously held in trust were transferred, not through the trust agreement but basically were transferred outside of the trust directly to the defendant's wife [, Arlene].

As I discussed in my discussions with Mr. Protas [counsel for the Molovinskys], if [Gale] had simply renounced any interest he had, then under the terms of the trust it would have continued with the wife being entitled to income for her life and, upon her death the trust would have terminated and the principal would have been to the children.

That is not what has occurred her[e] and I recognize that the trustee could not have been compelled to take this action, but I think that notwithstanding it is clear from the undisputed facts that the trustee took the action he took in this case—as a matter of fact, in his deposition said he consented to the action, that he took it at the request of [Gale] and therefore that it was a transfer or conveyance within the meaning of Sections 204, 206 and 207.

Further, the Court finds having had a chance to read Pierce [sic] [3] and considering arguments of counsel that the transfer that did occur of the principal of the trust to the wife was without consideration.

There is no evidence before the Court from which the Court could find or any reasonable fact-finder could find that the monies were transferred to cover any [ ]necessaries such as are described in Pierce [sic], so to that extent [the Council's] motion for summary judgment is granted.

With respect to all remaining matters, I believe that there are material disputes of fact so the motion for summary judgment as to the remaining matters is denied.

A written order embodying the court's grant of partial summary judgment was thereafter entered on the docket.

---

**3.** *Pearce v. Micka,* 62 Md.App. 265, 489 A.2d 48 (1985). We shall discuss this case later in the opinion.

That order stated, in pertinent part: "[T]he transfer of assets from [Gale to Arlene] constituted a 'conveyance' " and "Arlene Molovinsky gave no consideration, fair or otherwise . . . for the conveyance of the Trust assets to her."

In July 2001, the remaining counts of the Council's complaint came on for a bench trial. Nearly one year later, the court issued a seventeen-page memorandum opinion, resolving the remaining issues in favor of the Council. From entry of that judgment, this appeal followed.

We shall include additional facts in our discussion as necessary.

## DISCUSSION

### I.

The Molovinskys argue that the court erred in concluding that Gale conveyed the trust assets to Arlene without her giving fair consideration for the transfer, and thus erred in granting summary judgment in the Council's favor on that issue. They mount three arguments in support of this contention: (1) the transfer of trust assets did not constitute a conveyance because Gale had renounced his interest in the trust prior to the transfer; (2) Arlene gave fair consideration in exchange for the conveyance of the trust assets to her, either "in the form of past services performed by a spouse" or by virtue of the "obligation to provide necessaries"; and (3) the transfer of trust assets from the trustee to Arlene was in accordance with the trust instrument, and therefore she was not required to provide fair consideration. We reject all of these arguments.

This Court reviews an order granting summary judgment *de novo. Beyer v. Morgan State Univ.*, 369 Md. 335, 359, 800 A.2d 707 (2002). We are required to determine whether a dispute of material fact exists. *Id.* at 359–60, 800 A.2d 707. " 'A material fact is a fact the resolution of which will somehow affect the outcome of the case.' " *Matthews v.*

*Howell,* 359 Md. 152, 161, 753 A.2d 69 (2000) (quoting *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985)).

Summary judgment is only appropriate when, upon review of the facts and inferences therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. Md. Rule 2–501(e); *Frederick Road Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 93–94, 756 A.2d 963 (2000). If the record reveals that a material fact is in dispute, summary judgment is inappropriate. *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000). Once we have concluded that there is no genuine issue of material fact, we review the trial court's grant of summary judgment to ascertain if it was legally correct. *Jahnigen v. Smith,* 143 Md.App. 547, 555, 795 A.2d 234, *cert. denied,* 369 Md. 660, 802 A.2d 439 (2002).

## A.

The Molovinskys contend that the court erred in concluding that the transfer of trust assets from Gale to Arlene constituted a conveyance, as that term is defined in the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"). *See* Md.Code (1975, 2000 Repl.Vol.), § 15–201 *et seq.* of the Commercial Law Article.[4] They argue that Gale renounced his interest in the trust, and therefore Arlene, the second contingent beneficiary of the trust, lawfully received the trust's assets. We disagree.

MUFCA § 15–201(c) defines a conveyance as "every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." The record leaves no doubt that moving the trust's corpus from the Merrill Lynch account of Donald LaBarre, trustee, to a newly created ac-

---

4. All statutory references are to the Commercial Law Article (2000 Repl.Vol.).

count in the name of Arlene Molovinsky, was a "transfer," as contemplated by MUFCA § 15–201(c).

The Molovinskys attempt to circumvent the plain language of MUFCA § 15–201(c) by arguing that Gale renounced his interest in the trust, resulting in the trust lawfully passing by its terms to Arlene. In support of this argument, the Molovinskys rely on a sixty-eight year old case, *Bouse v. Hull*, 168 Md. 1, 176 A. 645 (1935). *Bouse* does not assist them.

We note at the outset that the facts of the instant case are distinguishable from those in *Bouse*. In *Bouse*, the Court of Appeals was asked to decide whether a group of corporate legatees under a will were subject to a collateral inheritance tax, notwithstanding that the legatees had renounced their legacies. *Id.* at 2, 176 A. 645. Gale, unlike the legatees in *Bouse*, did not execute "a formal and effective written renunciation" of his interest in the trust; instead, he executed a trust termination agreement, and in that agreement he instructed LaBarre "to disburse all remaining Trust assets into an account to be opened … in the name of Arlene M. Molovinsky."

More important to our decision, however, is the undisputed fact that Gale's actions prior to his execution of the trust termination agreement are at complete odds with the renunciation argument he advances on appeal. The uncontradicted evidence shows that Gale received monthly interest payments from the trust for several years prior to his arranging for the transfer of its assets. He authorized the trustee to invade the corpus of the trust to satisfy the 1994 judgment against him. And, he initiated the development of the trust termination agreement and instructed LaBarre to transfer the trust's assets to an account registered in his wife's name. We note also that the trust termination agreement does not contain the word "renounce" or any variation of it. Furthermore, had Gale renounced his interest in the trust, the trust would not have ceased to exist; instead, Arlene would have become the income beneficiary for the remainder of her life, with the corpus then passing to their children.

In sum, we see no error in the court's grant of partial summary judgment because "the transfer of assets ... to Arlene Molovinsky, Gale S. Molovinsky's wife, constituted a conveyance from Gale Molovinsky to Arlene Molovinsky."

## B.

■ The Molovinskys argue that the court erred in ruling that "Arlene Molovinsky gave no consideration, fair or otherwise ... for the conveyance of the Trust assets to her." They hinge their argument on the proposition in *Pearce v. Micka*, 62 Md.App. 265, 489 A.2d 48 (1985), that "past services from a spouse, or the obligation to provide necessaries may constitute consideration."

The Molovinskys' reliance on *Pearce* is misplaced. In *Pearce*, an insolvent husband deposited monies into his wife's checking account, which, after being commingled with funds from other sources, totaled approximately $6,000.00. *Id.* at 277, 489 A.2d 48. The wife used the money in this account to purchase food, clothing, and other necessaries. *Id.* at 278, 489 A.2d 48. This Court affirmed the circuit court's ruling that the husband's deposits of money did not constitute fraudulent conveyances, stating:

> [D]eposits of money used by [husband] to support his family did not constitute fraudulent conveyances because, within the meaning of the Uniform Act, there is "fair consideration" for the payment of money by a debtor to satisfy his obligation to provide necessaries for his wife and children. Nor do such expenditures constitute interspousal transfers of property to the prejudice of creditors within the meaning of art. 45, § 1. Providing necessaries for a family is not a transfer of property from one spouse to another.

*Id.* (citation omitted).

The Molovinskys cite no evidence in the record that supports their contention that Gale transferred the trust assets to Arlene in consideration for past services or the obligation to provide necessaries. In fact, Arlene acknowledged in her deposition that she had not given any consideration for the

transfer. In any event, we have reviewed the record and find not a scintilla of evidence before the court at the hearing on summary judgment that the transfer of the $400,000.00 trust corpus was to enable Arlene to provide necessaries for their family. We therefore agree with the court's conclusion that Gale's transfer of the trust assets to Arlene was without consideration.

## C.

The Molovinskys argue that Arlene should be excused from the fair consideration requirement of the MUFCA on the ground that "the transfer of the assets from the trust occurred as a function of the trust directive itself." This argument fails because it rests upon the premise that Gale had renounced his interest in the trust which, as we have already concluded, he did not.

## II.

■ The Molovinskys argue that the trial court was clearly erroneous in finding, after a trial on the merits of this issue, that Gale was insolvent at the time of the conveyance. We disagree.

Section 15–204 of the MUFCA provides: "Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." What this statute "was intended to address is that a conveyance is fraudulent as to creditors if it is made by a person who is insolvent or who will be rendered insolvent by it." *Field v. Montgomery County (In re Anton Motors)*, 177 B.R. 58, 61 (Bankr.D.Md.1995).

Section 15–202 of the MUFCA addresses insolvency. It states, in pertinent part: "A person is insolvent if the present fair market value of his assets is less than the amount required to pay his probable liability on his existing debts as they become absolute and matured." A debt, as defined in

MUFCA § 15–201(e), "includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent."

The court found Gale to have been rendered insolvent within the meaning of MUFCA §§ 15–202 and 15–204, by transferring the trust assets to Arlene. In reaching its decision, the court found:

> Gale Molovinsky, in his direct examination, testified that he had bank accounts and cash on hand of approximately $761 at the time of the Trust Termination Agreement in December 1998. On cross examination, he claimed that he had an additional "business" bank account at Riggs Bank with approximately $1,000 which he had not previously included, as well as some home furnishings whose value was never specified. In addition, he owns a home with Arlene Molovinsky, his wife, as tenants by the entirety, which is excluded from the tally because it is exempt from liability for his debts.

> On the liability side, Mr. Molovinsky stated in his affidavit that he had credit card debt of about $10,000,[ ] and owed a balance of $143,548 to Chevy Chase Bank on a home equity line of credit. In addition, there is the debt for attorneys' fees to [the Council], which is asserted by [the Council] and denied by [the Molovinskys].

\* \* \*

There can be no doubt but that [Mr. Molovinsky] had a "legal liability" for the attorneys' fees claim, as evidenced by Judge Bartnoff's subsequent order and judgment, from which Molovinsky took no appeal. The claim was "matured," since the legal services on which the claim was based had already been performed over the previous nine years. The fact that the amount of the liability on December 17, 1998 was not yet "liquidated" or "fixed" is inconsequential, under the statutory definition. The amount of the debt became "liquidated" and "fixed" when Judge Bartnoff

entered the judgment of June 30, 1999 in the amount of $152,628.78.

\* \* \*

Thus, on the date of the conveyance, Molovinsky had a *negative* net worth of ($304,415.78).

The Molovinskys take issue with these findings concerning Gale's insolvency. The findings are supported by the record. They therefore are not erroneous, much less clearly so. Md. Rule 8–131(c).

As evidenced by the superior court's order, from which Gale took no appeal, Gale had a legal liability for the attorneys' fees claim. We therefore agree with the circuit court that the claim had matured because the legal services upon which the claim was based had been performed over the preceding nine years.

■ The Molovinskys argue that the court erred in including the Council's claim for attorneys' fees in its solvency calculation because the fees awarded by the superior court had not been reduced to a judgment at the time the trust termination agreement was executed; consequently, they argue, the claim was not "fixed" or "liquidated." [5] This argument is unavailing because, under the statutory definition, a debt may be "unliquidated" and "contingent." Furthermore, it is not necessary for purposes of MUFCA § 15–202 that the debt be absolute and matured at the time of the transfer; it is only necessary that the assets be less than "the amount required to pay [the person's] *probable liability* on his existing debts *as* they become absolute and matured." *See* MUFCA § 15–202(a) (emphasis supplied). *Cf. F.S. Bowen Elec. Co. v. United States Fid. & Guar. Co.,* 256 F.2d 46, 49 (4th Cir.1958) (stating that the "[d]etermination of the issue of solvency ...

---

**5.** We agree with the circuit court that the amount of Gale Molovinsky's debt became "fixed" and "liquidated" when the superior court entered judgment, in June 1999, on the Council's fee petition.

requires an appraisal of probable liabilities as well as the salable value of assets").

### III.

■ The Molovinskys argue that the Council waived or abandoned the claim for attorneys' fees by waiting nearly six years after the underlying litigation concluded, and three years after the conclusion of the appeal, to file the fee petition. Our response to this argument is that the Molovinskys are barred by the doctrine of *res judicata* from raising waiver, since that claim was resolved against them in the superior court suit.

Recently, in *Ross v. American Iron Works*, 153 Md.App. 1, 834 A.2d 962 (2003), this Court set forth the elements of *res judicata*. They are: " '1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits.' " *Id.*, at 17, 834 A.2d 962 (quoting *Colandrea v. Wilde Lake Cmty Ass'n, Inc.*, 361 Md. 371, 392, 761 A.2d 899 (2000)); *accord United Book Press, Inc. v. Maryland Composition Co., Inc.*, 141 Md.App. 460, 476, 786 A.2d 1 (2001).

As we mentioned in our summary of the facts, in March 1999, the Council filed in the superior court a renewed and amended motion for attorneys' fees. Gale did not oppose the Council's motion. The superior court (Bartnoff, J.) thereafter granted the Council's motion and ordered Gale to pay the Council $152,628.78.

Sometime thereafter, Gale filed a motion to vacate the superior court's order, arguing preliminarily that he had not been served with a copy of the amended fee petition, and on the merits that the Council had waived the fee claim. As to the latter, Gale averred that the Council's Pennsylvania attorney, Catherine Nelson, had brokered a deal with LaBarre, and the two agreed to waive the attorneys' fee claim in exchange for Gale's agreement to pay off the original judgment. The

Council answered in opposition to Gale's motion to vacate. Attached to the answer was the affidavit of Ms. Nelson, who unequivocally denied that the Council had agreed to waive the claim for fees in exchange for Gale's satisfaction of the original judgment.

Following a hearing, the superior court denied Gale's motion to vacate, stating: "The Court does not find that the defendant [Gale] has raised any credible or meritorious objections to the fee petition or to the fees that were awarded." An order embodying the superior court's ruling was thereafter entered onto the docket. Gale did not appeal that judgment, rendering it final. Plainly, *res judicata* bars the Molovinskys from reasserting in the present case the waiver argument that was rejected by the superior court.

The Molovinskys declare in an argument heading in their brief, but without supporting argument, that the doctrine of accord and satisfaction precludes the Council's claim for attorneys' fees. This "argument" falls far short of the requirements of the rules of appellate procedure. *See* Md. Rule 8–504(a)(5); *Honeycutt v. Honeycutt*, 150 Md.App. 604, 618, 822 A.2d 551 (2003) (holding that where a party does not adequately brief an argument, we need not address it on appeal). We shall nonetheless exercise our discretion to address the issue briefly, but conclude there is no merit to it.

The equitable doctrine of accord and satisfaction ordinarily concerns monetary settlements of debts and liabilities. *Automobile Trade Ass'n v. Harold Folk Enters., Inc.*, 301 Md. 642, 665, 484 A.2d 612 (1984). This Court defined an accord and satisfaction as follows:

"Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance."

*Air Power, Inc. v. Omega Equip. Corp.*, 54 Md.App. 534, 538, 459 A.2d 1120 (1983) (citation omitted); *accord Wickman v.*

*Kane,* 136 Md.App. 554, 561, 766 A.2d 241, *cert. denied,* 364 Md. 462, 773 A.2d 514 (2001).

As we have said, there is no evidence in the record supporting the Molovinskys' position that the Council agreed to waive their claim for attorneys' fees once Gale satisfied the original judgment. Indeed, the record speaks unequivocally to the contrary. At trial, counsel for the Council asked Gale whether "Mr. LaBarre told you that he had asked the plaintiffs to give you a release of the claim for attorneys' fees, and they had refused to do it?" He answered: "I believe that is so."

## IV.

The Molovinskys also present the question "whether the Council was barred from the relief sought by perpetrating a fraud upon Gale Molovinsky, to-wit, by procuring a settlement of the underlying judgment without disclosing the claim for attorneys' fees." We do not address this question because nowhere in their brief do the Molovinskys supply argument relating to this assertion. *See* Md. Rule 8–504(a)(5); *Honeycutt,* 150 Md.App. at 618, 822 A.2d 551.

## V.

The Molovinskys' next contention does not detain us long. Without citation to authority, they argue that "[t]here is not a shred of evidence in the record of this trial which establishes, tends to establish or even suggests that Arlene Molovinsky is liable to" the Council for the $152,628.78 judgment entered by the superior court against Gale. The Molovinskys are wrong.

In *Damazo v. Wahby,* 269 Md. 252, 305 A.2d 138 (1973), the Court of Appeals was asked to decide whether an in personam judgment can be entered in a suit to set aside a fraudulent conveyance. The Court indicated that "if the subject of the fraudulent conveyance has been disposed of or cannot be reached, the person defrauded should be able to recover from the person to whom the transfer was wrongfully made, and through whose hands it passed." *Id.* at 256, 305 A.2d 138.

The Court's analysis in *Damazo* is equally applicable to the contention the Molovinskys now present. In Part I of our discussion, we affirmed the circuit court's ruling on summary judgment that Gale had fraudulently conveyed the trust's assets to Arlene. Consequently, Arlene, the fraudulent transferee, is liable by way of a personal judgment to the creditor, the Council. As the Court stated in *Damazo,* equity

> will adapt its relief to the exigencies of the case and will enter a money judgment if this will achieve an equitable result. The form of the relief should be so framed as "to place the judgment creditor in the same or similar position he held with respect to the fraudulent transferor prior to the fraudulent conveyance."

*Id.* at 257, 305 A.2d 138; *see also* MUFCA § 15–209 (providing that once a conveyance is proven to be fraudulent, a creditor has the option of either having the conveyance set aside or disregarding the conveyance and attaching or levying execution upon the property conveyed).

The Molovinskys' contention fails by resort not only to the law, but to logic. In enacting the MUFCA, the General Assembly did not seek to "restrict[ ] the legal or equitable remedies" available to a creditor, but to enact a statute declaratory of the common law. *Damazo,* 269 Md. at 256, 305 A.2d 138. If we were to accept the Molovinskys' position, the MUFCA would be rendered meaningless because a fraudulent transferee could dispose of the transferred assets, leaving a judgment creditor without legal redress. There is, in short, no merit to the Molovinskys' contention that the Council was not entitled to seek redress from Arlene, the fraudulent transferee.

## VI.

■ The Molovinskys argue that the circuit court abused its discretion in admitting into evidence the deposition testimony of Donald LaBarre. They specify that LaBarre's deposition testimony should not have been admitted because they were

not present at the deposition and did not have an opportunity to cross-examine the witness. We disagree.

In its case in chief, the Council sought to admit the deposition of LaBarre because he was unavailable to testify. Counsel for the Molovinskys objected and, after a lengthy colloquy between the court and counsel, the court ruled that LaBarre's deposition would be admitted into evidence. The court did not err in so ruling.

Maryland Rule 2–419(a)(3)(B) states:

The deposition of a witness, whether or not a party, may be used by any party for any purpose against any other party who was present or represented at the taking of the deposition or who had due notice thereof, if the court finds: that the witness is out of the State, unless it appears the absence of the witness was procured by the party offering the deposition.

Under Maryland Rule 2–419(c),

[a] deposition lawfully taken in another action may be used like any other deposition if the other action was brought in any court of this State, or any other state, or of the United States, involved the same subject matter, and was brought between the same parties or their representatives or predecessors in interest.

It is undisputed that LaBarre was not available to be deposed in this action because he was out of state, thus the requirements of Rule 2–419(a)(3)(B) have been met. Likewise, there is no question that the requirements set forth in Rule 2–419(c) have been satisfied. The Council took LaBarre's deposition on September 22, 1999, in connection with the garnishment proceeding the Council had filed against Gale.[6] The subject matter of the garnishment proceeding involved the same subject matter as that of the instant case,

---

**6.** Arlene Molovinsky was not named as a defendant in the garnishment proceeding. At the time, Gale, the named defendant, was Arlene's predecessor in interest regarding the trust assets.

namely, what trust assets, if any, were available to satisfy the Council's judgment against Gale.

Moreover, the Molovinskys are hard pressed to argue, now, that "[i]t is patently unfair to permit a deposition to be read into the record where the party against whom it is sought to be used was unable to cross-examine the witness." At trial, counsel for the Molovinskys acknowledged both that the Council's intention had been made known to him on at least four occasions, and that he had not objected on any of these occasions. Counsel for the parties also agreed that the Council offered to re-depose LaBarre, but that the Molovinskys did not express an interest in doing so.

In short, there is simply no reason to disturb the court's decision to admit the deposition testimony of LaBarre.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**